[S. F. No. 15407. In Bank.—May 17, 1937.]

BAY CITIES TRANSPORTATION COMPANY (a Corporation) et al., Respondents, v. CHARLES G. JOHNSON, State Treasurer, etc., Appellant.

U. S. Webb, Attorney-General, and H. H. Linney and James J. Arditto, Deputies Attorney-General, for Appellant.

Louis Ferrari, I. A. Cereghino, O'Melveny, Tuller & Myers and Louis W. Myers for Respondents.

THE COURT.—This suit was brought to recover corporation franchise taxes claimed to have been illegally levied and collected. The sole question presented is whether corporations whose common parent is a foreign corporation not li-

censed to do business in this state constitute an affiliated group within the meaning of the Bank and Corporation Franchise Tax Act. (Stats. 1929, p. 19; Deering's Gen. Laws, 1931 ed., Act 8488.)

The complaint alleges that Lawrence Warehouse Corporation during the taxable period in question was a foreign corporation, engaged solely as a holding company owning and holding all of the voting shares of the plaintiff Bay Cities Transportation Company and three other corporations, all of which were doing business in California. In a second cause of action it is alleged that Transamerica Corporation is a foreign corporation; that it is a holding company engaged exclusively in owning and holding stocks of various corporations and that during the same taxable period it held directly, or through ownership of all of the stock of Transamerica Bank Holding Company, in excess of 95% of the voting stock of a large number of corporations, including plaintiff Corporation of America. Almost all of these subsidiaries, it is alleged, were doing business in California during the year 1932.

According to the complaint, each of the plaintiffs filed a consolidated return of corporation franchise taxes for the members of the group with which each was affiliated. By this means the losses of some of the members of the consolidated group were materially offset by the profits of others, resulting in a substantial reduction in the amount of the tax. These returns were not accepted by the franchise tax commissioner. He made an additional assessment of a deficiency upon each return which each of the plaintiffs paid under protest. Plaintiffs seek to recover the amounts so paid.

There is no dispute concerning the facts. By his answer the State Treasurer expressly admits the allegations of the complaint, but he alleges that the corporations claimed by each of the returns to be members of an affiliated group did not comprise such a group within the meaning of the applicable tax act and that they did not have the privilege of making a consolidated return in lieu of separate returns. Upon the issues thus tendered the plaintiffs moved for judgment on the pleadings. The motion was granted and the appeal is from the judgment which followed this ruling.

In 1928 article XIII, section 16, was added to the Constitution. This section provides that "all financial, mercantile

manufacturing and business corporations doing business within the limits of this state'' in lieu of other taxes ''shall annually pay to the state for the privilege of exercising their corporate franchises within this state a tax according to or measured by their net income''. In 1929 the legislature passed the Bank and Corporation Franchise Tax Act, *supra,* to carry the constitutional provision into effect. This act, as amended in 1933 (Stats. 1933, p. 690), allows affiliated corporations to make a consolidated return of income and the present controversy turns upon the construction of such provision. So far as is material to the question at issue that portion of the act reads as follows: ''An affiliated group of . . . corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for any taxable year in lieu of separate returns. . . . As used in this section an affiliated group means two or more . . . corporations connected through stock ownership, . . . with a common parent corporation, if at least ninety-five per centum of the stock of each of the . . . corporations, except the common parent . . . corporation, is owned directly by one or more of the other . . . corporations, . . . and the common parent . . . corporation owns directly at least ninety-five per centum of the stock of at least one of the other . . . corporations . . . The parent corporation and each subsidiary, a member of the group during any part of the consolidated period shall be severally liable for the tax . . . computed upon the consolidated net income of the group.''

Appellant concedes that the respondents would be entitled to the benefits of this provision if the parent of each of them was a California corporation or a foreign corporation doing business in this state. But it is contended that as the parent of each of the respondents at the time the taxes were levied was a foreign corporation not licensed in this state and not taxable herein, there was no affiliated group of corporations within the meaning of the statute.

It is apparent that section 14 of the California act was largely patterned after section 141 of the Federal Revenue Act of 1928 (26 U. S. C. A., 1928 edition, sec. 2141). The provisions of the federal act were construed in the case of *Commissioner of Internal Revenue* v. *Manus Muller & Co., Inc.,* 79 Fed. (2d) 19, which presented the single question of law whether under the federal statute two domestic cor-

porations might file a consolidated return as affiliates when their affiliation depended entirely upon the fact that a foreign corporation owned more than 95% of the shares of each. The court decided adversely to the taxpayer. It said: "When a business is single, industrially and financially, it ought to be assessed as such; there is but a single income and intramural transactions cancel each other; that is the notion which supports the affiliation. But if a foreign corporation is the only nexus which unites domestic subsidiaries—if it is the 'parent',—this theory can be realized only by bringing its income into hotchpot with the rest, just what section 141 (e), 26 USCA, sec. 2141 (e), itself forbids. To eliminate that income and still to treat as a unit those companies which are a unit only because the excluded foreign corporation holds their shares, is to deny the premise and affirm the conclusion. True, it would not compromise the result in practice when the 'parent' had no income, but those would be uncommon instances. There are indeed circumstances which may justify such a course and subdivision (3) mentions one; an affiliation in which an insurance company is 'parent'. (*Corner Broadway-Maiden Lane, Inc.,* v. *Commissioner,* 76 Fed. (2d) 106 [C. C. A. 2].) But the income of the 'parent' can there be taxed, and is excluded from the consolidated return only because a different rate and method of assessment apply to it. The income of a foreign corporation cannot be taxed, except so far as it arises in this country."

Section 141 (e) of the Federal Revenue Act of 1928 provided in part: "A consolidated return shall be made only for the domestic corporations within the affiliated group." This provision might imply that foreign corporations could be members of an affiliated group for all purposes, but the inclusion of their incomes in the consolidated return. But in the Manus Muller case the court said "though that no doubt is the natural meaning, it is not the inevitable one". As negativing the implication of section 141 (e) the court pointed to another provision of the act, which declared that "a foreign corporation shall not be deemed to be affiliated with any other corporation within the meaning of section 141 or 142". (Sec. 238.) Considering these two sections in connection with the other provisions of the act, the court held that if the parent corporation was a foreign corporation not taxable

under any act, the subsidiaries could not file a return of consolidated income.

Provisions similar to sections 141 (e) and 238 of the federal act are not found in the California statute, but this is not decisive. The one section expressly contradicted the implication of the other. Of more importance is the direction found in the 1933 amendment to section 14 of our statute that "if a consolidated return is made subject to the provisions of this section, the tax imposed under this act shall be computed as a unit upon the consolidated net income of the group". This certainly requires that the income of each corporation in the group shall be included in the total amount returned as income for all.

Respondents insist, however, that in the present case the income of the parent corporations need not be brought into hotchpot with the rest because the statute exempts holding companies. (Sec. 4, as amended in 1933; Stats. 1933, p. 870.) Such a construction would require the franchise tax commissioner to determine whether a foreign corporation is entitled to exemption while it stands beyond the borders of the state with its books and records. To apply such a rule in this case would mean that the respondents, not choosing to transact business within the state, may nevertheless claim the exemption allowed holding companies exercising their corporate franchises within this state.

The plain provisions of the act do not admit of any such construction. To allow foreign corporations not licensed to do business in California to set off losses sustained outside of the state against the income of California corporations whose income is subject to tax, would entirely defeat the governmental purpose of the constitutional amendment and the statute enacted pursuant to it. By this means, the taxes which corporations doing business in California should pay for that privilege could be avoided. If corporations receive the benefits of California operations they must be willing to accept the obligations which go with those benefits. To claim the exemption allowed by our tax statute, a foreign corporation must come into this state where its business may be subjected to the legitimate inquiry which the state may demand in connection with taxation.

The respondents invoke the rule of strict construction of a taxing statute. But the rule extends to exemptions as

well as to impositions and there should be a strict construction against an exemption which would accomplish absurd and inequitable results. (*Estate of Bull*, 153 Cal. 715 [96 Pac. 366].) "Grants of exemption from taxation cannot be allowed unless the intention to do so is expressed in direct terms or is fairly inferable from the language of the instrument by which the right is claimed." (*Cypress Lawn etc. Assn.* v. *San Francisco*, 211 Cal. 387, 390 [295 Pac. 813].)

The language of the corporation tax statute when considered in the light of its purpose makes certain that there can be no return of consolidated income unless there is an affiliated group of corporations subject to taxation for the privilege of exercising their corporate franchises within this state. If the parent corporation is not exercising its corporate franchise in California there is no affiliated group within the meaning of the act.

The judgment is reversed with directions to the trial court to enter judgment for the appellant.

Rehearing denied.