[L. A. No. 24769. In Bank. Feb. 6, 1959.]

SANTA FE TRANSPORTATION COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann, James C. Maupin and Jay L. Shavelson, Deputy Attorneys General, for Appellant.

Robert W. Walker and Robert B. Curtiss for Respondent.

CARTER, J.—Plaintiff, Santa Fe Transportation Company, a corporation, hereinafter referred to as plaintiff, or the transportation company, brought this action against the State Board of Equalization for a refund of taxes paid under protest.[1]

---

[1]The tax assessed encompassed the period from November 1, 1950 until October 31, 1953. Defendant refunded to plaintiff a penalty

Plaintiff transportation company is a wholly owned subsidiary of the Atchison, Topeka and Santa Fe Railway Company. Under an agreement executed in July, 1937 between the transportation company and the railway company, the plaintiff agreed to transport tangible personal property in less than carload lots moving on the railway's bills of lading. Under another agreement, executed in 1951, the transportation company agreed to perform for the railway company "pickup and delivery" services which were described as the transportation from local freight depots of the railway company in California to the customer's warehouse or place of business in the vicinity of such depots and from the customer's warehouse or place of business to such local depots, of goods moving on bills of lading of the railway company which were either theretofore or thereafter transported by the plaintiff under the same bills of lading of the railway company from one station to another over public highways outside the corporate limits of cities. The railroad bills of lading required the railroad to make pickups and to deliver the goods from the point of origin to the point of destination.

Plaintiff's pickup and delivery services were, for the most part, accomplished by the use of lighter equipment than the "line haul" (intercity) operations which, for the most part, used heavier equipment. It is conceded by the plaintiff that in 8.8 per cent of the operations line haul equipment was used for pickup and delivery services whereas in 91.2 per cent of the operations the line haul equipment was used in the intercity operations. In some instances the lighter equipment was used in intercity operations.

The tax here disputed was assessed by defendant Board of Equalization under the provisions of the California Motor Vehicle Transportation License Tax Law (Rev. & Tax. Code, §§ 9601-9607, 9651, 9652 et seq.).

Section 9603, subdivision (a), defines "operator" as "Any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly."

Section 9606 defines "Gross receipts" as follows: " 'Gross receipts' include all receipts from the operation of motor vehicles entirely within this State and a proportion, based upon the proportion of the mileage within this State to the

---

assessed by it and paid by plaintiff, and it has been stipulated between the parties that the correct amount to which plaintiff would be entitled is the sum of $33,244.38 which includes $4,958.07 interest.

entire mileage over which such operations extend, of the receipts from the operation of motor vehicles passing through, into, or out of this State, or partly within and partly without this State. . . .

" 'Gross receipts' do not include revenue derived by an express company from the shipment of property over the lines of common carriers, but do include revenue derived by an express company from the transportation of property in motor vehicles operated by it."

Section 9652 provides that: "For the purpose of the proper administration of this part and to prevent evasion of the tax it shall be presumed that the gross receipts from all operations of operators are subject to the tax until the contrary is established."

Section 9651 provides that: "A license tax is hereby imposed upon operators at the rate of 3 per cent of the gross receipts of the operators from operations."

Section 9653 provides that: "This part does not apply to operators of motors [sic] vehicles operated exclusively within incorporated cities or between incorporated cities or incorporated cities and private property where no portion of the public highway outside the corporate limits of the cities is traversed in such operation.

"*The tax does not apply to the gross receipts derived from the transportation of persons or property wholly within incorporated cities or between incorporated cities or incorporated cities and private property or wholly on private property where no portion of the public highway outside the corporate limits of the cities or private property is traversed in such operation.*"[2] (Emphasis added.)

It is plaintiff's position that its intracity pickup and delivery service, even though admittedly part of its intercity service, was separate and distinct from its line haul operations and thus within the emphasized portion of the exemption statute just set forth. It is argued that the intracity pickup and delivery service is "wholly" within incorporated cities and not over public highways. Defendant, on the other hand, contends that plaintiff's intracity pickup and delivery service was an inseparable part of its intercity service.

There is no dispute as to the facts. The dispute arises over what legal effect is to be given them. Plaintiff's books were

---

[2]This section was amended in 1955 by the addition of another paragraph which will be hereinafter discussed.

kept by an employee of the railway company and were segregated as to pickup and delivery service and line haul operations. There was no segregation when line haul equipment was used for pickup and delivery service and no segregation when the lighter equipment was used for intercity service. The price charged for pickup and delivery service was 25½ cents per 100 pounds, while the line haul charge was on a cost plus percentage basis. The drivers of the line haul equipment and pickup and delivery service equipment were members of different unions, however, as heretofore noted, both types of equipment were operated to some extent on an interchangeable basis. All equipment was serviced at the same garage. In some 21 cities, pickup and delivery service was accomplished by equipment other than that owned by the transportation company. Plaintiff transportation company held a certificate of public convenience and necessity from the Public Utilities Commission which authorized it to do both an intercity and an intracity business and which authorized it to move on billing of the railway company at its published tariff rates. Plaintiff was also separately licensed as a city carrier.

Plaintiff relies upon the case of *California Motor etc. Co.* v. *State Board of Equalization* (1947), 31 Cal.2d 217 [187 P.2d 745], in support of its position that its intracity pickup and delivery service was a separate and untaxable part of its business. Defendant board relies on the case of *Bekins Van Lines, Inc.* v. *Johnson* (1942), 21 Cal.2d 135 [130 P.2d 421], in support of its position that the intracity pickup and delivery service was an inseparable and taxable part of plaintiff's intercity operations.

In the California Motor case it was held that the intercity and intracity operations of the plaintiff were so entirely separate and distinct as to constitute two separate businesses. In the California Motor case the plaintiff was a highway common carrier which operated under a certificate of public convenience and necessity restricted to intercity operations and which prohibited it from operating any intracity pickup and delivery service in any of the three cities which were part of its intercity operations. Plaintiff purchased the equipment of the pickup and delivery service in Los Angeles which had formerly been used by it for its intracity service; it also purchased the equipment of the Oakland and San Francisco pickup and delivery service. Plaintiff, after acquiring a license as a city carrier, operated the Los Angeles and Oakland

pickup and delivery services, and the former owner of the San Francisco pickup and delivery service continued to operate it for the plaintiff. Plaintiff operated its pickup and delivery services under written contracts with the express company which covered only that portion of the goods transported in intracity movement. There were also separate written contracts covering the intercity and interterminal transportation. It was found by the trial court that different equipment was used for the inter- and intracity services; that " 'its equipment never deviated from its devotion to the service for which it was licensed. It kept accounts restricted to its character as a highway carrier. . . . That plaintiff is both a highway carrier and a city carrier and it exists in each of these characters by separate authority. Each business [of plaintiff] has a separate license or certificate. . . . The businesses were not confused or entangled and did not overlap. The Court finds that the two operations, that of a city carrier and that of a highway carrier, are just as separate and distinct for all purposes of this case as if the two operations had been conducted by separate and distinct corporations or legal entities.' '' It was also there found that " 'plaintiff has at all times kept separate and distinct books and records covering said pickup and delivery service and entirely independent of books and records covering its intercity operations.' ''

In the Bekins Van case (which was decided in 1942 but which involved taxes assessed for the years 1935 and 1936 under the provisions of the California Motor Vehicle Transportation License Tax Act), it was held that intracity pickup and delivery service which was maintained for the transportation of small consignments to and from intercity terminals was taxable as part of the gross receipts. This court then stated that: ''The trial court in the present case properly concluded that receipts from all hauls which originated in one city for transportation over the public highways or which terminated in a city after such transportation should be treated without distinction as taxable gross receipts from operation.

''It is shown that receipts from intra-city business as excepted from the act were not included in the computations of gross receipts from operation as defined by the act. Nor were charges for labor furnished for the purpose of packing and crating goods, or warehousing, included in the gross receipts subject to taxation. All exceptions and limitations provided by the act were contemplated in the additional assess-

ment paid under protest by the plaintiff. The trial court correctly concluded that the assessment of the additional tax was in accordance with the statute.'' (21 Cal.2d 135, 142.)

In the Bekins case the amounts charged for pickup and delivery service in intracity movement were separately indicated on the waybills; smaller equipment was used for the intracity operations than was used in intercity hauls.

In the California Motor case, a majority of this court distinguished the Bekins case as follows:

''In support of its position that the assessments upon the receipts of pickup and delivery service performed by plaintiff were lawfully made, defendant relies in particular upon the case of *Bekins Van Lines, Inc.* v. *Johnson* (1942), 21 Cal.2d 135 [130 P.2d 421]. The situation in that case, however, does not coincide with that now before us. There it was not proven and found by the court, as here, that the plaintiff conducted two separate and distinct business operations, each of which performed distinct and different services under contracts separately executed with the recipient of the services. Rather, the plaintiff there argued that before the tax rate was applied, it was entitled to deduct from its gross receipts for the hauling of goods from its customers' dwellings in one city to those in other cities an amount computed as attributable to services rendered in loading and unloading such goods between house and sidewalk, *as well as amounts 'separately indicated on its waybills received from pick-up and delivery service within municipalities.'* In its opinion this court continued (p. 139 of 21 Cal.2d), 'In intercity hauls of small consignments the plaintiff found it more convenient to pick up and deliver with the use of smaller trucks between the point of pick-up or delivery and the larger truck or van which was to transport or which had transported the goods over the public highways. *In other intercity hauls, the van or truck received and discharged the load directly at the door.* The plaintiff contends that receipts from such separate pickup and delivery service within municipalities in connection with intercity hauls should be excepted from assessment under the act because that service is conducted entirely within municipalities and does not employ any part of the public highways.' . . .

''It is to be noted, also, that the court in its opinion in the above-cited case points out (p. 142 of 21 Cal.2d) that 'receipts from intra-city business as excepted from the act [Rev. & Tax. Code, § 9653] were not included [by the Board of Equalization] in the computation of gross receipts from operation as

defined by the act. Nor were charges for labor furnished for the purpose of packing and crating goods, or warehousing, included in the gross receipts subject to taxation,' and that (p. 138) in its return to the board for the years in question 'the plaintiff reported its gross receipts from all transportation business in the state exclusive of hauls excepted by section 14 [now § 9653] of the act,' but claimed deductions therefrom as described above. *It thus appears that only receipts from those services which were found to be integral parts of the single operation of moving goods from a dwelling, over the public highways, to their destination outside of the city in which the moving operation originated, were held subject to the tax.* By contrast, plaintiff in the instant case is not moving the goods of its own customers in intercity operations whereof the pickup and delivery service forms an integral part of a unitary operation, but is rather, as found by the trial court, engaging in two separate and distinct businesses, severally authorized by a certificate of public convenience and necessity and by a permit to operate as a city carrier, in which it renders to an express company, which alone deals with the general public, separate services under separate contracts and with separate and independent bills rendered therefor. Manifestly, the fact that the same goods were the subjects of both intracity and intercity transportation does not establish that as a matter of law there was but a single business operation. In truth, the plaintiff in its capacity of highway carrier was, as previously noted, prohibited from rendering pickup and delivery service in any of its terminal depot cities and, hence, could carry intercity only the identical goods which were the subject of pickup and delivery by some other operation or agency.'' (Emphasis added.)

A comparison of the facts of the case at bar with the distinctions above drawn shows: That plaintiff carried goods for its parent company, the railway company, on the railway's bills of lading; that while plaintiff had two certificates, one of which was an intracity license, its certificate of public convenience and necessity was not prohibitory but included the right to conduct intracity transportation; that pickup and delivery service and intercity operations were rendered under separate contracts although it appears that the original 1937 contract covered intracity pickups and deliveries as well as line hauls; that while no separate bills were rendered for the two services, different charges were made for intra- and intercity operations; that pickup and delivery charges were registered by the

railway agents and forwarded to the plaintiff which kept monthly summaries and payment was remitted monthly by the agents; that while bookkeeping was segregated on the basis of pickup and delivery and line haul operations, there was some intermingling and overlapping both as to the bookkeeping and the operations themselves in that no distinction was made as to wholly intracity pickups and deliveries.

In the Bekins case it was held to be of no significance that plaintiff there used smaller equipment for pickup and delivery as a matter of its own convenience. In the California Motor case it was held to be of great significance that there was no overlapping or intermingling of the use of the two types of vehicles and that there was separate billing and a complete separation of the intra- and intercity accounts as a matter of bookkeeping. It was also held significant in the California Motor case that while the pickup and delivery services were owned by the intercity transportation company, both businesses were conducted on behalf of an independent third party—the express company. Factually, the case at bar appears more like the Bekins case than it does the California Motor case. The Bekins case was not overruled by the California Motor case but was distinguished only because of the factual differences existing in the two cases.

■ Plaintiff argues that there is nothing in section 9653 to indicate a legislative intention that a transportation operation was exempt from taxation only if it is entirely separated from or in no way related to another transportation which is conducted on highways outside the city limits. The answer to this contention lies in the wording of the statute in which it is provided that the tax does not apply where the transportation of property is *wholly* within or between incorporated cities *"where no portion of the public highway* outside the corporate limits of the cities or private property *is traversed in such operation."* (Emphasis added.) A majority of this court said in the Bekins case (21 Cal.2d at pp. 140, 141) that "The preparatory activities sought to be excepted are just as much a part of and essential to transportation, and therefore to operation of motor vehicles, as are actual loading and unloading operations which are also preparatory to the rolling of the vehicle along the highways. To adopt the plaintiff's suggestion would be to add to the language of the definition a limitation which the Legislature did not express and which it must be deemed it did not intend. If the Legislature intended to exclude from 'operation' as

defined every incidental service and activity customary and essential in the matter of transporting goods for compensation and hire, it could easily have said so. By failure to use any such limiting words the Legislature indicated its intention of not so limiting or circumscribing the meaning or scope of the act. (*In re Bush*, 6 Cal.2d 43 [56 P.2d 511].) Under the applicable rules of construction this court may not supply any language which the Legislature must be deemed to have omitted intentionally.''

Plaintiff also contends that the Bekins case was decided on facts occurring prior to the 1939 amendment to the act which, it is argued, constituted a substantive change in the law. This same contention was made with respect to the 1941 codification of what is now section 9653 in *San Diego etc. Ry. Co.* v. *State Board of Equalization* (1948), 89 Cal.App.2d 267, 270 [200 P.2d 573], where the court said: ''We find no merit in this contention. No change in the language of the statutes has been made which compels such conclusion; and if the Legislature intended, by the slight changes made in the wording of the law, that in determining gross receipts subject to taxation, only that portion of a single fare attributable to transportation in unincorporated territory should be taxed, no reason appears why cryptic language should have been used. Where prorationing has been intended, as provided in section 9606, *supra*, the Legislature has so provided in definite terms; and its failure to provide for the apportionment of gross receipts from inter-city travel on a mileage basis, when it specifically so provided regarding interstate travel, is convincing evidence that no such result was intended. It is beyond the province of courts to read into section 9653, *supra*, language which, we must assume, was intentionally omitted. Furthermore, that the Legislature did not intend to provide for prorationing as claimed is indicated by section 9652, *supra*. Also section 9653 is an exemption statute, and as such is subject to the rule that exemptions from taxation are to be strictly construed against the taxpayer. (*Cypress Lawn Cemetery Assn.* v. *San Francisco*, 211 Cal. 387, 390 [295 P. 813]; *Bay Cities Transp. Co.* v. *Johnson*, 8 Cal.2d 706, 712 [68 P.2d 710]; *Miller* v. *McColgan*, 17 Cal.2d 432, 441-442 [110 P.2d 419, 134 A.L.R. 1424]; *Robertson* v. *Johnson*, 55 Cal.App.2d 610, 614 [131 P.2d 388].)'' Plaintiff's argument that the court in the San Diego case was referring to the 1941 codification, rather than the 1939 amendment, is without merit. The court was referring specifically to the

Bekins case as is apparent from its conclusion: "Therefore, our conclusion is that the decisions in *In re Bush* and *Bekins Van Lines, Incorporated, supra,* are applicable and controlling in this case." The 1941 codification of what is now section 9653 divided the section into two parts, changed a comma to a period and substituted the word "does" for the phrase "imposed hereunder shall."

It should be noted that while the trial court made findings which are in accord with the facts heretofore set forth, it concluded that defendant was not entitled to assess the tax because it was levied on "gross receipts from the transportation of goods in operations wholly within the limits of incorporated cities or between incorporated cities where no portion of the public highway outside the corporate limits of such cities were traversed. . . ."

It appears to us that the wording of the statute is significant and that the Legislature undoubtedly intended that the exemption should apply only where entirely intracity operations were concerned. It, of course, cannot be denied that in the California Motor case the pickup and delivery service while intracity was incidental to the intercity operations of the plaintiff there as it was in the Bekins case. There is, of course, in the Bekins case and the one under consideration an intermingling of operations which was not present in the California Motor case although the same company conducted both types of operations in all three cases. In view of the holding in the San Diego case heretofore set forth which involved intra- and extra-city transportation of passengers, the amendment to section 9653 by the addition of subsection (c) in 1955 is interesting. It is there provided that "If any incorporated city imposes any tax or any franchise or license fee measured by the gross receipts *derived from the transportation of passengers and any operator engaged in the transportation of passengers partly within and partly without the city, the tax imposed by this part does not apply to the portion of the gross receipts attributable to operations within the city and included in the measure of the city tax or fee.* The amount of gross receipts to which the tax does not apply under this subdivision shall not exceed the proportion of the operator's gross receipts that the mileage operated within the city bears to the entire mileage over which the operations extend." (Emphasis added.) By the addition of this subsection the Legislature provided for a prorationing of gross receipts where intra- and extra-city *pas-*

*senger* service was involved. No similar provision has been enacted to take care of the intra- and extra-city transportation of property. In the absence of such legislation, and under the section as it now stands, we do not see how intra-city operations which are an inseparable part of intercity operations can be considered exempt from the gross receipts tax.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons stated by Mr. Justice Patrosso in the opinion prepared by him for the District Court of Appeal in *Santa Fe Transportation Co.* v. *State Board of Equalization* (Cal. App.), 328 P.2d 990.

Shenk, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied March 4, 1959. Shenk, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.

Gen. Laws, Act 652) was part of a joint deposit agreement entered into by husband and wife while it was in effect, since its repeal any restriction it might theretofore have imposed on the depositors' power to contract could survive only by virtue of its continued existence as part of the contract of the parties, who could not, however, contract away their power to contract in the future, since the law, not private agreement, determines the essential elements of a valid contract.