Filed 5/16/22  P. v. Santana CA3
Opinion following rehearing

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093432 |
| Plaintiff and Respondent, | (Super. Ct. No. 00F06961) |
| v. | OPINION ON REHEARING |
| ALEJANDRO SANTANA, | |
| Defendant and Appellant. | |

A jury found defendant Alejandro Santana guilty of the robbery-carjacking murder of a car salesman while on a test drive in 2000.  He was sentenced to life without the possibility of parole and we affirmed his convictions on appeal.  (*People v. Santana* (June 10, 2010, C060202) [nonpub. opn.] (*Santana*).)

Defendant appealed from the summary denial of his postjudgment petition to vacate his murder conviction under Penal Code section 1170.95,[1] arguing that the trial

---

[1]  Further undesignated statutory references are to the Penal Code.

1

court deprived him of his statutory right to the assistance of counsel and his right to due process by summarily denying his petition without giving counsel an opportunity to be heard. He also argued the trial court could not rely on this court's recital of an alleged unadjudicated fact in *Santana*—that he was the actual killer—to conclude as a matter of law that he was ineligible for relief under section 1170.95.

We originally agreed that the trial court erred in summarily denying the petition without first obtaining briefing from defense counsel but held that the error was harmless because the record of conviction, which the trial court properly considered, established defendant's ineligibility as a matter of law. We therefore affirmed the order denying defendant's section 1170.95 petition.

Shortly after we issued our opinion, Senate Bill No. 775 (2021-2022 Reg. Sess.) went into effect. Defendant filed a petition for rehearing based on the new legislation, and we granted the petition, vacated our opinion, and obtained supplemental briefing from the parties on the impact, if any, of Senate Bill No. 775 on defendant's appeal. Defendant contends Senate Bill No. 775 as well as our Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) require reversal.

Finding no merit to his contentions, we shall affirm.

## BACKGROUND[2]

A few months before the murder in 2000, defendant purchased a maroon Camaro Z28 with a defective transmission. He told several coworkers that he intended to steal a car for its transmission, that he had a gun, that a new transmission would cost $6,000, that

---

[2] Defendant requested that we take judicial notice of the record in his direct appeal in case No. C060202, including this court's prior unpublished opinion. We treated the request as a motion to incorporate the record in case No. C060202 and granted the motion. We take the facts from our unpublished opinion in *Santana* affirming defendant's convictions. (*Santana, supra*, C060202.)

2

he could not afford a new transmission, and that he would need help removing a transmission from another car and putting it into his.

On the morning of August 22, 2000, defendant and his friend Jose Rivera did not go to work. Defendant's father saw defendant with someone who looked like Rivera having breakfast at the restaurant where defendant's father worked. Later that day, three skinny young men—Anthony Camacho, Rivera, and Theodore Santos—accompanied defendant, who was much chunkier than his friends, to a car dealership. Defendant and Camacho went on a test drive in a green or teal Camaro with the victim while Rivera and Santos followed in Rivera's black Camaro. Defendant, who was sitting in the backseat, shot the salesman in the back of the head. He and Camacho then dumped the victim's body on the side of the freeway.

Witnesses observed three Hispanic males wiping off a greenish-blue Camaro in a parking lot on Q Street. One of the men was chubby, probably weighing between 200 and 220 pounds. The witnesses saw the stocky man get into a black Camaro with his skinny friend and drive away. They went to a park, where defendant tossed a shirt into the river. The shirt was recovered and admitted as evidence at trial.

The four men went to Rivera's apartment. A witness saw a short, thin young man and a heavyset man take a white plastic bag to the dumpster. Police found a pair of blue jeans with a 40-inch waist, a white shirt, and socks in the plastic bag. Defendant admitted the jeans may have been his, and DNA testing determined that material found on the jeans genetically matched both defendant and the victim.

Rivera called a coworker, Daniel Soto, and asked to exchange cars, purportedly to drive his mother to the hospital. A second coworker, Nathan Brones, accompanied Soto to the exchange and testified that Rivera's companion was wearing purple sweatpants and worn hiking boots. Soto was "75 percent sure" Rivera's companion was defendant.

Camacho, Rivera, and Santos were apprehended and tried for murder. Camacho and Rivera were convicted of murder, and Santos was convicted of being an accessory

3

after the fact.[3]  Defendant fled to Mexico, where he lived under a false identity for five years.  He was arrested in Mexico in 2005, deported, and subsequently tried for the car salesman's murder.

At defendant's trial, Santos was reluctant to testify, claiming that the hypnosis he underwent in 2004 helped him to forget the details about the murder.  The prosecution, however, played a tape for the jury of an interview he had with a detective in August 2000 shortly after the murder.  During this interview, Santos described the foregoing chronology of events and identified defendant as the " 'Alex' " who needed the transmission and planned to scare the car salesman out of the car but shot him instead, and who then discarded his shirt and maybe his gun in the river.

Evidence also showed that on the night of the killing, Rivera confided to his close friend and casual lover that he had been involved in a murder.  Rivera explained that he owed a friend a favor and agreed to drive him to a car dealership so the friend could steal a car for a new transmission.  Unbeknownst to him, his friend had a gun, and he accidentally shot the car salesman who accompanied them on a test drive of the car he planned to steal, then pushed the salesman out of the car onto the side of the freeway.  Although Rivera's lover encouraged him to go to the police, he refused because he did not want to " 'snitch' " on his friends.  She told him that if the police came looking for him, she would provide them with information regarding where he lived and a description of his car.

Alex Gonzales, one of defendant's friends from high school, testified that defendant was a bully, overbearing, and bigger than all of them.  Before the murder, Gonzales had bought a Cobra at the same car dealership.  He returned to the dealership

---

[3]  *People v. Rivera* (Sept. 28, 2004, C042375), [nonpub. opn.]; *People v. Camacho* (Apr. 10, 2003, C042933), [app. dism. by order]; *People v. Rivera* (Mar. 28, 2003, C042375) [Santos app. dism. by order].

4

several times for repairs, and later asked if he could exchange his Cobra for the teal Camaro. Rivera and Santos teased Gonzales about his car because it was not " 'as fast as a Z28.' "

At trial, defendant argued that witnesses who referred to " 'Alex' " meant Alex Gonzales, and he, not defendant, was responsible for the shooting.

The jury found defendant guilty of first degree murder with true findings of the special circumstances that the murder was committed during a robbery and a carjacking (§ 190.2, subd. (a)(17)), and that defendant personally used a firearm (§ 12022.53, subd. (b)). The jury found not true that he intentionally and personally used a firearm and thereby caused the victim's death (§ 12022.53, subd. (d)). Defendant was sentenced to life without the possibility of parole plus 10 years.

In October 2020, defendant filed a petition for resentencing under section 1170.95. He checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first or second degree murder because of changes made to section 188 and section 189, effective January 1, 2019. He also checked boxes alleging that he was not the actual killer; that he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder; that he was not a major participant in the felony or that he did not act with reckless indifference to human life during the course of the crime or felony; and that the victim was not a peace officer.

Defendant's petition requested the appointment of counsel. The trial court appointed defense counsel from the Conflict Criminal Defenders list.

5

The People moved to dismiss the petition based on defendant's failure to make a prima facie showing that he was eligible for resentencing under section 1170.95. They argued, based on this court's prior opinion in *Santana*, that defendant was ineligible for relief because he actually killed the car salesman during the robbery and carjacking.

Before obtaining briefing from defendant's appointed counsel, the trial court summarily denied defendant's petition in a memorandum decision. The court reasoned that defendant was not entitled to relief as a matter of law because "[t]he appellate opinion affirming [defendant's] conviction and sentence reflects that [defendant] was the actual killer and was convicted of murder on a theory of being the direct perpetrator and not on a theory of felony murder of any degree, or a theory of natural and probable consequences." Defendant timely appealed.

## DISCUSSION

Defendant contends the trial court erred in summarily denying his section 1170.95 petition without obtaining briefing from his appointed counsel, and that the court could not rely on facts from our opinion in *Santana* to deny the petition. In supplemental briefing, he contends that Senate Bill No. 775 and *Lewis* mandate reversing the trial court's denial of his section 1170.95 petition, and remanding for an order to show cause hearing.

We again agree that the court erred by denying the petition without first receiving briefing from both parties, but we find the error harmless for the reasons explained below. We remain unchanged in this view despite the passage of Senate Bill No. 775 or the Supreme Court's decision in *Lewis*.

### I

### *Applicable Law*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person

6

who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 achieved these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95, "which provide[d] a procedure by which those convicted of murder [could] seek retroactive relief if the changes in the law would affect their previously sustained convictions." (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, citing Stats. 2018, ch. 1015, §§ 2-4.) Upon receiving a facially sufficient petition, the trial court reviewed the petition and determined whether the petitioner had made a prima facie showing that he or she was entitled to relief.[4] (Former § 1170.95, subd. (c).) If a petitioner satisfied his or her prima facie burden, the court had to issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction. (Former § 1170.95, subds. (c), (d)(1).) At the

---

[4] As originally enacted by Senate Bill No. 1437, section 1170.95, subdivision (c) stated: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (Stats. 2018, ch. 1015, § 4.)

7

hearing, the prosecution bore the burden of proving beyond a reasonable doubt that the petitioner was ineligible for resentencing. (Former § 1170.95, subd. (d).)

In *Lewis, supra*, 11 Cal.5th at pages 961-962, our Supreme Court interpreted the meaning of former section 1170.95, subdivision (c). It held that if a defendant files a facially sufficient petition and requests appointment of counsel, the trial court must appoint counsel and entertain further briefing from the parties before determining whether the defendant has made a single prima facie showing that he or she is entitled to relief. (*Lewis, supra*, at pp. 963, 966, 970.) After appointing counsel and providing an opportunity for briefing, the trial court may then consider the record of conviction, including a prior appellate court opinion, to determine whether the petitioner has made the requisite prima facie showing.[5] (*Lewis, supra*, at pp. 970-972; *People v. Woodell* (1998) 17 Cal.4th 448, 454-455.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, at p. 971.)

The prima facie inquiry is limited, however. (*Lewis, supra*, 11 Cal.5th at p. 971.) As *Lewis* explained, the court must take the petitioner's factual allegations as true and it does not engage in factfinding. (*Ibid.*) But, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

---

[5] We reject defendant's argument that there is "little authority to suggest" the record of conviction includes a prior appellate opinion. *Lewis* makes clear that "[a]ppellate opinions . . . are generally considered to be part of the record of conviction." (*Lewis, supra*, 11 Cal.5th at p. 972.) And while the probative value of an appellate opinion is case-specific and may " 'not supply all answers' " (*ibid.*), a trial court may consider such an opinion under section 1170.95, subdivision (c) when making the prima facie determination. (*Lewis, supra*, at pp. 970-971.)

Following *Lewis*, the Governor signed Senate Bill No. 775 (2021-2022 Reg. Sess.) into law in October 2021, amending section 1170.95 to, among other things, expand the persons eligible for resentencing to those convicted of attempted murder and manslaughter, codify our Supreme Court's holding in *Lewis* regarding a petitioner's right to counsel, and clarify the standard to determine the existence of a prima facie case under subdivision (c). (Stats. 2021, ch. 551, §§ 1, subd. (b), 2.) Senate Bill No. 775 went into effect on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c).)

As amended, section 1170.95, subdivision (c), now provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c), as amended by Stats. 2021, ch. 551, § 2.)

## II

### *Analysis*

Defendant's petition for resentencing met the requirements for facial sufficiency and he requested counsel. *Lewis* therefore dictates the conclusion that the trial court erred in summarily denying defendant's petition without first obtaining briefing from his appointed counsel, effectively denying him his statutory right to counsel. Despite this error, the *Lewis* court also concluded the deprivation of a petitioner's right to counsel under subdivision (c) of section 1170.95 is state law error only, tested for prejudice under

9

*People v. Watson* (1956) 46 Cal.2d 818.[6]  (*Lewis, supra*, 11 Cal.5th at pp. 972-974.)

Applying that test, any error in summarily denying a section 1170.95 petition may be harmless unless the petitioner can show " ' "it is reasonably probable that if [they] had been afforded assistance of counsel [their] petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis, supra*, at p. 974.)

Here, the record of conviction, including this court's prior opinion in *Santana*, unequivocally establishes defendant was the actual killer.[7]  According to our prior opinion, "[d]efendant, who was sitting in the backseat, shot the salesman in the back of the head [and] [w]ith Camacho's help, he dumped the body on the side of the freeway." (*Santana, supra*, C060202 [at p. 2].)  Defendant admittedly did not petition for rehearing to correct any alleged misstatements of the material facts underlying his convictions.  As such, we presume the facts previously stated by this court in *Santana* were "faithful to the appellate record before us and reliably summarized the evidence against defendant."

---

[6]  In light of *Lewis*, we reject defendant's contention that the denial of his statutory right to counsel under section 1170.95, subdivision (c), constituted structural constitutional error requiring automatic reversal without any showing of prejudice.  As *Lewis* explained, "[t]here is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*Lewis, supra*, 11 Cal.5th at p. 972.) Thus, "a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process." (*Id.* at p. 973.)

[7]  The trial court also offered an apparently erroneous alternative basis for denying the petition—that defendant was not convicted of felony murder.  The parties agree that the prosecution sought the murder conviction based on a felony-murder theory.  "[O]n appeal, we review the decision of the trial court rather than its reasoning and thus '. . . a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason.  If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion.' " (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)  Therefore, we do not further address the trial court's reasoning that defendant was convicted as a direct perpetrator rather than for felony murder.

(*People v. Guilford* (2014) 228 Cal.App.4th 651, 661.) The trial court could thus rely on *Santana* in determining defendant was ineligible for relief as the actual killer.

We are not persuaded by defendant's argument that in light of Senate Bill No. 775's amendments to section 1170.95, subdivision (d), which governs a resentencing hearing after a prima facie showing has already been found (§ 1170.95, subd. (d)(1), (3)), a trial court may consider only the procedural history of a prior appellate court opinion in making the required prima facie determination under section 1170.95, subdivision (c). As the People point out, the plain language of subdivision (d)(3)[8] applies to resentencing hearings and not the prima facie hearing now required by subdivision (c). (*People v. Clements* (2022) 75 Cal.App.5th 276, 292 [recognizing that subd. (d)(3) as amended by Sen. Bill No. 775 "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing"].) Had the Legislature intended to apply the same limitation to the prima facie hearing under subdivision (c), it clearly knew how to do so. But it did not. And we are precluded from inserting such a limitation when the Legislature did not itself include it when amending the statute. (See, e.g., *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85 ["In construing a statute, we are ' "careful not to add requirements to those already supplied by the

---

[8] Section 1170.95, subdivision (d) provides in relevant part: "(1) Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction . . . . [¶] . . . [¶] . . . (3) At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by [Senate Bill No. 1437]. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . ."

11

Legislature" ' "]; *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 ["In the construction of a statute or instrument," courts do not "insert what has been omitted, or . . . omit what has been inserted"]; *Santa Fe Transp. Co. v. State Bd. of Equalization* (1959) 51 Cal.2d 531, 539 [when the Legislature fails to put limitations into a statute, it " 'must be deemed to have omitted [the language] intentionally' "].)  Because defendant never made it past the prima facie stage under subdivision (c), any evidentiary limitations found in subdivision (d)(3) do not apply.

In any event, even if we assume the trial court erred in relying on *Santana*'s factual summary identifying defendant as the actual killer because it was inadmissible hearsay that was not properly considered during the prima facie review stage, other portions of the record of conviction, in particular the jury instructions and the jury's special circumstance and enhancement findings, show *the jury itself* found defendant actually killed the victim.  (*Schabarum v. California Legislature, supra*, 60 Cal.App.4th at p. 1216 [judgment correct on any theory of law will be upheld despite trial court's reasons for reaching judgment].)  Based on the jury's determination, defendant was ineligible for relief as a matter of law.

The court instructed the jury that if it found defendant guilty of first degree murder, it then had to decide whether the charged robbery and carjacking special circumstances were true.  The jury was partly instructed on the special circumstances as follows:  "If you are satisfied beyond a reasonable doubt the defendant actually killed a human being, you need not find the defendant intended to kill in order to find the special circumstance to be true."  To find the special circumstances true, then, the jury had to have found that defendant either intended to kill or was the actual killer.  Thus, contrary to defendant's argument, defendant's status as the "actual killer" was an issue squarely before the jury during trial.

The jury found defendant guilty of first degree murder and found the robbery and carjacking special circumstances true.  It also found true that defendant personally used a

firearm during the offense (§ 12022.53, subd. (b)), but it found not true that defendant had *intentionally* and personally used a firearm causing death (§ 12022.53, subd. (d)). The special circumstance findings, *coupled with* the firearm enhancement findings, show the jury necessarily found that defendant had personally used a firearm to kill the car salesman, but that he did not do so intentionally.  Although the true finding on the personal use of a firearm enhancement alone might not have been sufficient to preclude defendant from relief as defendant argues, it is the jury's true finding on that enhancement *plus* the jury's true finding on the robbery and carjacking special circumstances and the not true finding on the intentional and personal discharge causing death enhancement that renders defendant ineligible for relief as a matter of law.

Because the issue of whether defendant actually killed the car salesman was submitted to the jury via the combined special circumstance and firearm enhancement findings, defendant's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 is misplaced.  There, the trial court cited a statement in a prior appellate opinion that the defendant had thrown the fatal punch that killed the victim in summarily denying his petition after finding he was convicted as the actual killer.  (*Id.* at pp. 975-977.)  On appeal, the First Appellate District found that the trial court erred in relying on the factual statement from its prior appellate opinion because the opinion did not identify any express finding that the defendant threw the fatal punch, any uncontroverted evidence establishing that fact, or any concession by the defendant of its truth, although there was evidence in the record to support the factual statement.  (*Id.* at p. 980.)

Here, by contrast, the record of conviction, including the jury instructions and the jury's express findings on the special circumstance and the firearm enhancements, show that the jury considered and found that defendant was the actual killer, but that he killed the car salesman accidentally.  Considering such procedural facts, i.e., what instructions were given to the jury and the jury's findings as evidenced by its verdict forms, does not involve the weighing of evidence or the exercise of discretion, and is permissible at the

prima facie stage. (*Lewis, supra*, 11 Cal.5th at pp. 971-972.) Thus, even if we assume the trial court could not have relied on the factual summary from this court's prior appellate opinion as a basis for denying the petition, it nevertheless reached the correct result. (See, e.g., *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 779-780, fn. 6 [if a trial court's decision is correct on any theory of law applicable to the case, the appellate court will affirm the judgment, whether the trial court's reasons were correct or not], superseded by statute on another issue; *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 182 [appellate court reviews the correctness of the judgment, not the reasoning or grounds assigned for the ruling, and will affirm a judgment correct on any theory].)

We further reject defendant's contention that had the jury found that he actually killed the car salesman, that it would have found the enhancements alleged under section 12022.53, subdivisions (c) and (d) true, as they both required the "personal discharge" of a firearm. Because "personal use" under the section 12022.53, subdivision (b) enhancement, which the jury found true, does not imply discharge, defendant reasons that the jury did not find he was the actual killer. But, as the People note, the verdict form shows that the firearm enhancement theory the jury actually rejected was that defendant "*intentionally* and personally used . . . a handgun, and thereby caused the death of . . . [the victim]" under section 12022.53, subdivision (d).[9] (Italics added.) The jury's not true finding on the subdivision (d) allegation as stated in the verdict form *combined with* its true findings on the subdivision (b) allegations were consistent with the trial evidence that defendant had accidentally killed the car salesman. When these findings are considered together with the jury's true findings on the special circumstances, which

[9] The record shows the firearm enhancement alleged under section 12022.53, subdivision (c) was never submitted to the jury, and, therefore, the jury never made a finding as to that allegation.

14

required either that defendant intended to kill or actually killed the car salesman, it is clear the jury found defendant actually killed the victim here, but did so accidentally.

As the actual killer, defendant was not legally eligible for section 1170.95 relief from his murder conviction. (See, e.g., *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 [the defendant was not entitled to relief as a matter of law because the record of conviction showed the jury found him guilty of second degree murder while personally and intentionally using a firearm to commit the crime; the jury's implicit determination that the defendant was the actual killer barred him from relief under § 1170.95], review granted Mar. 18, 2020, S260410, and held for *Lewis*; review dism. Oct. 27, 2021, and opinion deemed noncitable and nonprecedential "to the extent it is inconsistent with" the Supreme Court's decision in *Lewis*.) Thus, defendant cannot show a reasonable probability that the outcome of the proceeding would have been any different had the trial court obtained briefing from defense counsel before summarily denying the petition.[10]

---

[10] To the extent the trial court failed to conduct a hearing at the prima facie stage of review as now required by Senate Bill No. 775, we conclude that any error is harmless given our conclusion that he is ineligible for relief as a matter of law. Defendant would not benefit from the changes and remand would be an idle act. (*People v. Gutierrez-Salazar, supra*, 38 Cal.App.5th at pp. 419-420; *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 [rejecting remand "where doing so would be an idle act that exalts form over substance"].)

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

/s/
RAYE, P. J.

We concur:

/s/
ROBIE, J.

/s/
HOCH, J.