[No. 25409. Department One. February 20, 1935.]

STANDARD OIL COMPANY, *Appellant*, v. KING COUNTY, *Respondent*.[1]

*Battle, Hulbert, Helsell & Bettens,* for appellant.

*Robert M. Burgunder, Arthur M. Hare,* and *David J. Williams,* for respondent.

TOLMAN, J.—Appellant, as plaintiff, brought this action to recover taxes paid by it under protest. A

[1]Reported in 41 P. (2d) 156.

trial on the merits to the court, sitting without a jury, resulted in a judgment denying relief. The plaintiff has appealed.

The taxes involved are those for the year 1932, which were levied upon three certain vessels owned by the appellant, registered at the port of Seattle and used primarily to distribute petroleum products from the main storage tanks of the Standard Oil Company of California at Point Wells, fourteen miles north of Seattle, to the smaller substations of that company located at the various ports on Puget Sound and the straits of Juan de Fuca in the state of Washington.

The products are all brought from California by large tank steamers, which are unable, because of their size, to make deliveries at the various substations. Therefore, they discharge their cargoes at Point Wells into the large storage tanks there provided, to be later distributed by the smaller vessels as the trade may demand. Occasionally, and apparently as a convenience only and to save rehandling, some small part of the cargo of one of these large tankers is, at Point Wells, discharged directly into one of the distributing vessels.

During the year 1932, two of the three small vessels here involved made regular trips from Point Wells to the ports of Port Angeles, Neah Bay, Clallam and Sekiu on the straits of Juan de Fuca, all of the ports visited being located within the state of Washington; but in making the trip from Point Wells to any and to all of the other ports just named, the vessel necessarily entered upon and passed through waters which are designated as "high seas" by the Federal authorities.

Apparently, the two vessels which were operated as distributors during the year 1932 were employed on these trips to ports on the straits from fifteen to twenty per cent of the time, and the remaining eighty

per cent of the time they were wholly employed in inland waters distributing to other ports in the state of Washington.

■ The statute under the terms of which appellant seeks to bring its vessels is chapter 81, Laws of 1931, p. 242, § 1, which reads:

"All ships and vessels whose home ports of registry are in the State of Washington, engaged in interstate commerce, foreign commerce and/or commerce between ports of the State of Washington and the high seas, shall be and are hereby made exempt from all taxes of every kind whatsoever, except taxes levied for any state purpose." Rem. Rev. Stat., § 11111-2 [P. C. § 6882-7a].

The appellant has established that the home port of registry of its vessels is in this state, but we think its proof fails to qualify them for exemption from taxation, notwithstanding they are so registered. Admittedly, these vessels were not engaged in foreign commerce, and in view of our strict rule of statutory construction in all cases where exemption from taxation is claimed, we think they were not engaged in interstate commerce or in commerce between ports of Washington and the high seas.

In the case of *Norwegian Lutheran Church v. Wooster,* 176 Wash. 581, 30 P. (2d) 381, we adopted the language of Judge Cooley as follows:

"If an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." 2 Cooley on Taxation (4th ed.), § 672.

We now reaffirm our adherence to that rule.

Applying the rule, it would seem that, to qualify as being engaged in interstate commerce, the vessel must

be exclusively so engaged, or at least primarily so engaged. It may very well be doubted that there was here even an incidental act done which was interstate in its nature within the meaning of the statute we are discussing. The cargoes of the tankers from California were consigned to, and destined for the storage tanks at, Point Wells, there to come to rest and later to be distributed in intrastate commerce. When the tankers came to rest at Point Wells and nothing remained but to discharge cargo, the mere incident of occasionally discharging a small part into the distributing vessel was not sufficient to place that vessel in interstate commerce within the meaning of the exemption statute. The primary use governs. *People ex rel. v. Muldoon,* 306 Ill. 234, 137 N. E. 863, 28 A. L. R. 857.

Nor do we think "commerce between the ports of the state of Washington and the high seas" can, for exemption purposes, be construed to apply to any vessel engaged in commerce between the ports of Washington which enters upon or passes through the high seas, even though primarily engaged in so navigating the high seas.

We doubt if the legislature had in mind at all the pilot rules of the Federal government, or was concerned with what might or might not be the technical meaning of the term "high seas." The language used by the legislature clearly means no more than that those vessels whose initial port is located in Washington and whose outer destination is beyond the jurisdiction of this state shall be so exempted.

It has been suggested that our fishing fleet, which plies the high seas destined to no port and with no thought of visiting any port but only of returning in due season to its home port, or those vessels which go into the high seas to meet and tow in or offer pilot service or other service to vessels inbound from foreign

ports, may have been in the legislative mind. We offer no opinion upon what the legislature meant by the words used, except that, under the rule of strict construction, it clearly did not mean to exempt from taxation those vessels plying between ports of this state which entered waters designated by the Federal government as high seas, while at the same time granting no exemption to like vessels engaged in commerce between local ports, which do not enter the technical high seas area. Such a classification, if attempted, would seem to be arbitrary and unreasonable.

The judgment of the trial court was right, and it is affirmed.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.