[Civ. No. 5865. Fourth Dist. Sept. 15, 1958.]

STAR AND CRESCENT BOAT COMPANY (a Corporation), Respondent, v. COUNTY OF SAN DIEGO et al., Appellants.

James Don Keller, District Attorney and County Counsel, Carroll H. Smith, Deputy, J. F. DuPaul, City Attorney (San Diego), and Aaron W. Reese, Assistant City Attorney, for Appellants.

Donnelley, MacNulty & Butler for Respondent.

MUSSELL, J.—This is an action for refund of county and city taxes paid by plaintiff under protest on three tugboats owned and operated by plaintiff. Recovery is sought for the sum of $13,836.92 in taxes assessed against the tug "San Diegan" and paid by plaintiff for the years 1955 and

1956; also for the sum of $17,397.31 in taxes assessed against the tug "Challenger" and paid by plaintiff for the years 1953, 1954, 1955 and 1956; and for the further sum of $11,467.95 assessed against the tug "Cuyamaca" and paid by plaintiff for the years 1953, 1954, 1955 and 1956. Plaintiff bases its right to recover said taxes on the ground that the three tugboats were exempt from city and county taxes under article 13, section 4 of the Constitution of this state, which provides as follows:

*"Exemptions; vessels; restriction.* All vessels of more than 50 tons burden registered at any port in this State and engaged in the transportation of freight or passengers shall be exempt from taxation except for state purposes . . ."

The facts were stipulated at the trial and are embodied in two written stipulations. It appears therefrom that each of the three tugs, namely, the "San Diegan," the "Challenger" and the "Cuyamaca" were vessels of more than 50 tons burden; that each of said three vessels were registered in the Port of San Diego; that respondent Star and Crescent Boat Company was the owner of said three tugs and was also the owner of three oil barges bearing numbers 23, 24 and 25; that respondent had contracts in writing for the transportation of petroleum products with the following companies: General Petroleum Corporation, Richfield Oil Corporation, Shell Oil Company, Inc., Standard Oil Company of California, The Texas Company, Union Oil Company, Tidewater Oil Company, and the United States Navy; that petroleum products owned by the above named companies were transported in the three barges owned by respondent and towed from the Los Angeles area to the San Diego area by respondent's tugboats; and that in connection with the transportation of said petroleum products the Star and Crescent Boat Company has paid to the United States government, pursuant to section 4271 of the Internal Revenue Code, during the years 1953, 1954 and 1956, the sum of $86,400.19 for transportation taxes. It was further stipulated that approximately 95 per cent of the gross revenue earned by said tugs during the period when such taxes were assessed and levied was derived from towing barges carrying petroleum products belonging to others. It was also stipulated and agreed by the parties that the time spent by the individual tugs for the periods in question in towing these barges loaded with petroleum products under contracts of affreightment was as follows: "Cuyamaca"

95.83 per cent, "Challenger" 91.09 per cent, and "San Diegan" 83.15 per cent.

The trial court concluded, inter alia, that said tugboats were engaged in the transportation of freight for hire during that percentage of time when they were engaged in the performance of affreightment contracts, and for said proportionate time were, and are, exempt from ad valorem property taxes; that said vessels were not engaged in the transportation of freight for hire for the balance of the time but for said period were engaged in the performance of coastwise towage and salvage contracts and in towing operations in San Diego Harbor, and for said proportionate times were not exempt from ad valorem property taxation. The trial court then prorated the exemption pursuant to the percentage of time spent by each tugboat under the affreightment contract to its total time spent in operation for the calendar years in question.

The principal question for determination on this appeal is whether the said tugboats were "engaged in the transportation of freight" during the times involved so as to be exempt from taxation under the provisions of article 13, section 4, of the Constitution of this state. Apparently the appellate courts of California have not passed upon the precise question involved.

In a superior court action in San Francisco brought by the Shipowners and Merchants Tugboat Company, a corporation, against the city and county of San Francisco, case numbered 373602, the tugboat owners sought to recover taxes alleged to have been collected in violation of section 4, article 13, of the Constitution. According to the memorandum of opinion filed in that case, as set forth in respondent's brief, the tugs involved conducted towing operations and engaged in coastwise, car float and general towing on San Francisco Bay and tributaries. The court therein quoted from *White* v. *Steam-Tug Mary Ann*, 6 Cal. 462, where the court said, at page 470 [65 Am.Dec. 523]:

". . . We think that the towing of a vessel out to sea by a steamer (tug) is the transportation of property, without resorting to any other than the necessary construction arising from the generic and common meaning assigned to the word 'transport.'"

It was further stated in said memorandum that towing service is the employment of one vessel to expedite the voyage of another just as a locomotive is necessary to transport the

freight carried in freight cars or a truck is necessary to transport the freight carried in a trailer; that they become an integral part of commerce as, of course, a barge or other floating vehicle without motive power could not move without the assist of a tug; that the authorities are uniform in holding that the services performed by tugboats constitute transportation and are uniform in holding that the transportation is of the *freight or passengers* as well as of the vessel or barges containing them; that it appears that the intent and purpose of the constitutional exemption "was to assist the shipping industry in this State" and a review of the proceedings in the Legislature would confirm this conclusion; that therefore all activities of the tugboats were "engaged in transportation" within the meaning of the constitutional exemption; that it is immaterial whether particular tugboats may have done one type or another or whether they furnished part or in other cases all of the motive power; and that they are therefore entitled to the benefit of the constitutional exemption. It was ordered that judgment be entered for and on behalf of plaintiffs. This case was not appealed and it was stipulated herein that since 1949, based upon the opinion therein, the administrative construction placed by the assessor's office of the city and county of San Francisco upon the constitutional provision of article 13, section 4, has been to declare tugboats of over 50 tons burden and properly registered as exempt from taxation under and by virtue of said provision. In this connection the parties herein further stipulated that the administrative construction placed upon this provision since 1934 by the assessors of San Diego County, based upon an opinion by the district attorney, has been to declare said tugboats not exempt from taxation under said provision, and that for the past twenty years the administrative construction placed upon said provision by the county of Los Angeles has been to deny the exemption.

In section 209 of the Public Utilities Code "transportation of property" is defined as including every service in connection with or incidental to the transportation of property. In 49 U.S.C.A. section 902(h) the term "transportation" is said to include the use of any transportation facility (irrespective of ownership or of any contract, express or implied, for such use), and section 902(g) of said code defines "transportation facility" as including any vessel, warehouse, wharf, pier, dock, yard, grounds, or any other instrumentality or

equipment of any kind, used in or in connection with transportation by water subject to that chapter.

In *Cornell Steamboat Co.* v. *United States*, 53 F.Supp. 349, 353, the court stated that, nautically, to transport is "to haul a vessel by hawsers," and that a barge is both a "vessel" and "property." In *Ohio River Sand Co.* v. *United States*, 60 F.Supp. 563, 564, the court said:

"It seems clear that the towing of barges containing petroleum products constitutes transportation of property by water within the provisions of the statute. It is not necessary that the motive power applied to move the barges be in the barges themselves. The movement of barges by tugs is similar to the transportation of freight over highways in trailers attached to motor trucks. Transportation implies the taking up of persons or property at some point and putting them down at another. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U.S. 196, 203 [5 S.Ct. 826, 29 L.Ed. 158]."

In *Gulf Coast Towing Co.* v. *United States*, 196 F.2d 944, 946, plaintiff sued to recover alleged overpayment of federal transportation taxes and the court said:

"There can be no question that the compensation received by the towing company was that for the operation of a fully manned tugboat for towing barges, loaded and unloaded, used by the cement corporation in transporting raw materials used in its cement manufacturing business. Both the barges and the raw materials loaded thereon and towed by appellant's tug under the towage agreement were the 'property' of the cement corporation. Such towage was the transportation of property."

In *Sacramento Nav. Co.* v. *Salz*, 273 U.S. 326 [47 S.Ct. 368, 369, 71 L.Ed. 663], it is said that:

"To transport means to convey or carry from one place to another; and a transportation contract for the barge without the tug would have been as futile as a contract for the use of a freight car without a locomotive. In this view, by the terms of the contract of affreightment, in part expressed and in part necessarily resulting from that which was expressed, the transportation of the goods was called for, not by the barge, an inert thing, but by the barge and tug, constituting together the effective instrumentality to that end."

In the instant case the record shows that plaintiff was engaged in the business of transporting freight rather than of towage. Plaintiff entered into contracts of affreightment with General Petroleum Corporation, Richfield Oil Corpora-

tion, Shell Oil Company, Inc., Standard Oil Company of California, the Texas Company, and the Tidewater Oil Company. These contracts referred to plaintiff as the "carrier" and are each entitled "Transportation Agreement." They provide that the carrier undertakes to act as contract carrier of the products belonging to the oil companies. These companies agree to deliver to carrier's vessels at the oil companies' docks in San Pedro gasoline, fuel oil and other petroleum products. The oil companies agree to pay the carrier for the performance of such transportation in accordance with schedules set forth in the agreements. No distinction is made between the tug and the barge and the barges and tugs are owned by the plaintiff. The cargo carried is clearly freight (Civ. Code, § 2110), and it is obvious that plaintiff could not transport the fuel and other products in the barges without the use of the tugs. It is likewise clear that plaintiff's tugs were engaged in the transportation of freight within the meaning of article 13, section 4, of the Constitution.

■ Defendants argue that the court erred in prorating the exemption. However, there is no provision in Article 13, section 4, of the Constitution for prorating the exemption and since we have concluded that the tugs involved were engaged in the transportation of freight, it follows that the exemption should have been allowed in its entirety.

In *County of Los Angeles* v. *Craig*, 38 Cal.App.2d 58 [100 P.2d 818], in an action to recover personal property taxes on a vessel, the evidence showed that said vessel was designed for the transportation of freight and passengers; that it had been actively used for that purpose for many years and had never been used for any other purpose; and that it was laid up temporarily because of business conditions. The court there said:

"To hold that a vessel designed for the transportation of freight and passengers and used solely for that purpose is not 'engaged in the transportation of freight or passengers' within the meaning of said section while temporarily laid up for repairs or because of business conditions would lead to absurd results and would go far toward defeating the purpose of the exemption. It would mean that such vessel would be exempt from taxation only while being actively and continuously used for such transportation and would not be exempt during any period of temporary, enforced idleness. This could not have been the intention of the framers of the section or the intention of the people in adopting the same."

In *Standard Oil Co.* v. *King County*, 180 Wash. 631 [41 P.2d 156], it was held that to qualify as being engaged in "interstate commerce" so as to be exempt from county taxation, a vessel must be exclusively so engaged or at least primarily so engaged.

In the instant case it is apparent that the tugs of plaintiff boat company both as to revenue and as to time were primarily engaged in the transportation of petroleum products.

Plaintiff has not appealed from the judgment herein and is bound by it and by the provision denying exemption as to approximately 10 per cent of the refund claimed. As is said in *County of San Bernardino* v. *County of Riverside*, 135 Cal. 618, 620 [67 P. 1047], "The right to accept the fruits of a judgment or order, and the right to appeal therefrom, are not concurrent, but are wholly inconsistent, and an election of either is a waiver and renunciation of the other." The judgment herein is therefore affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 12, 1958.

---

*Assigned by Chairman of Judicial Council.