[Civ. No. 8110.   Fourth Dist., Div. One.   Jan. 9, 1967.]

ALALUNGA SPORT FISHERS, INC., Plaintiff and Respondent, v. COUNTY OF SAN DIEGO et al., Defendants and Appellants.

[Civ. No. 8111.   Fourth Dist., Div. One.   Jan. 9, 1967.]

JOHN R. VANCE, Plaintiff and Respondent, v. COUNTY OF SAN DIEGO et al., Defendants and Appellants.

(Consolidated Appeals.)

Bertram McLees, Jr., County Counsel, and Lawrence Kapiloff, Deputy County Counsel, for Defendants and Appellants.

Walkoe, Dierdorff & Pyle and Albert E. Walkoe for Plaintiffs and Respondents.

WHELAN, J.—In each of two actions, the appeals in which have been consolidated by stipulations made at the time of oral argument, the owner of a sportfishing vessel of more than 50 tons burden recovered judgment for repayment of taxes assessed, levied and collected by the County of San Diego and the City of San Diego. The county and the city have appealed from the judgments.

The appeal in case No. 8110 was from the judgment in favor of the owner of "Alalunga"; in case No. 8111, from judgment in favor of the owner of "Betty Lou."

What is said herein with regard to "Alalunga" applies equally to "Betty Lou."

The actions were brought after denial by the board of supervisors of plaintiffs' verified claims for refund of taxes for the years 1961, 1962 and 1963.

"Alalunga" admittedly is a seagoing vessel of more than 50 tons burden, registered at the port of San Diego.

The other factual evidence is that sportfishing vessels generally: ". . . sell tickets to people who buy the tickets for the privilege of going fishing on this boat, they start out at whatever hours they are scheduled for. . . . They otherwise give them some service in their sportfishing and they bring them back home again. . . . they do not load them at one spot and discharge them at any other spot. They bring them right back to where they took them on."

A statement prepared by a deputy county assessor recites that such vessels:

". . . are inspected periodically by marine inspection officers with regard to the seaworthiness of the vessel and safety of the passengers aboard. The Coast Guard designates the number of passengers they may carry, the range of their

operation at sea, as well as the necessary safety equipment and practices to be used. . . . The boats furnish the necessary bait for fishing, a fishing space aboard, sleeping facilities as required, rest room facilities, and helpful fishing instructions. They also furnish, for an additional fee, light meals, liquid refreshments, and fishing tackle.

''Their operation normally begins in April and runs through September or October of each year, depending on the fishing conditions. The months of April through June are devoted principally to miscellaneous sportfishing in the vicinity of the Coronado Islands. July through September are devoted principally to albacore fishing in open waters off San Diego. This again, is dependent on fishing conditions. The passengers do not know their exact destination when they leave the dock.

''. . . There are . . . various people who purchase reservations merely for the purpose of sightseeing.''

Article XIII, section 4, California Constitution, provides: ''All vessels of more than 50 tons burden registered at any port in this State and engaged in the transportation of freight or passengers shall be exempt from taxation except for state purposes.''

The judgment is based essentially upon the court's finding that ''Alalunga'' is ''engaged in the transportation of . . . passengers'' for hire.

Defendants attack that finding frontally. They contend additionally that the court erred in not permitting testimony concerning whether the Public Utilities Commission of the State of California deems the vessels in question to be common carriers and whether the commission regulates the activities of such vessels; and in not permitting the testimony of one James C. Potts concerning the number of vessels engaged in the same activities as the vessels in question and the very small number of such vessels that are over 50 tons burden.

### Alleged Error In Exclusion Of Evidence

Defendants' argument may be summarized thus:

(a) The Public Utilities Commission, under section 701, Public Utilities Code, has the supervision and regulation of all common carriers (§ 216), which includes the operation of a vessel engaged in the transportation of persons or property for compensation between points upon the inland waters of

this state or upon the high seas between points within this state. (Pub. Util. Code, § 211.)

(b) If "Alalunga" is not being regulated by the commission, such fact would indicate that the vessel is not a common carrier within the meaning of the Public Utilities Code and is not a part of the shipping industry.

(c) Therefore, evidence to show whether "Alalunga" is so regulated is relevant and material.

The argument overlooks the fact that in certain matters the power of the commission to regulate the activities of passenger carriers does not extend to vessels exempt from local taxation under article XIII, section 4. Section 4661, Public Utilities Code, adopted in 1963, reads as follows: "As used in this chapter, 'for-hire vessel' includes any vessel, by whatsoever power operated, carrying passengers for hire, except a seaplane on the water, and vessels exempt from taxation under Section 4 of Article XIII of the Constitution of the State of California."

Defendants' offer to show that most sportfishing vessels are of not more than 50 tons burden is irrelevant. The line of classification is betweeen vessels of 50 tons burden or less and those of over 50 tons. It is not an unreasonable classification so far as the equal protection clause of the federal Constitution is concerned.

The offered evidence is without value to show the intention of the people to include or exclude sportfishing vessels from the constitutional exemption.

Is The Vessel One Engaged In The Transportation Of Passengers For Hire?

The solution of the problem calls for application of the rule cited by defendants, that statutes offering exemption from taxes are to be construed strictly and narrowly in favor of the taxing agency and against the taxpayer. (*Santa Fe Transp. Co.* v. *State Board of Equalization,* 51 Cal.2d 531, 539 [334 P.2d 907]; *Estate of Morris,* 56 Cal.App.2d 715, 727 [133 P.2d 452]; *Atlantic Coastline R.R. Co.* v. *Phillips,* 332 U.S. 168 [91 L.Ed. 1977, 67 S.Ct. 1584, 173 A.L.R. 1].)

It calls also for application of the rule that: " '. . . if the words of an enactment, given their ordinary and popular signification, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning' (23 Cal.Jur. 730, § 109) and that 'Where a word, having a technical, as well as a popular meaning, is used in

the Constitution, the courts will accord to it the popular meaning, unless the nature of the subject indicates or the context suggests, that it is used in a technical sense.' '' (*County of Los Angeles* v. *Craig,* 38 Cal.App.2d 58, 61 [100 P.2d 818].)

We accept defendants' contention that the purpose behind the adoption of the constitutional amendment was to assist the shipping industry in this state. (*County of Los Angeles* v. *Craig, supra* (1940) 38 Cal.App.2d 58, 61; *Star etc. Boat Co.* v. *County of San Diego,* 163 Cal.App.2d 534, 537 [329 P.2d 716].)

While such was the obvious purpose behind the adoption of the amendment, it is equally obvious that that purpose is not exclusively served by the language of the amendment itself. The interpretation for which defendants argue would require reading into the amendment the words ''between different fixed points or termini.''

The meaning of ''transportation'' and of ''passenger'' are involved in the problem. The following definitions are from Webster's New International Dictionary, Second Edition:

''Transportation: 1. Act of transporting, or state of being transported; carriage; removal; specif., systems and modes of conveyance of persons or goods from place to place.

''Transport: 1. To convey; esp., to carry or convey from one place or station to another, as by boat or rail. . . .

''Passenger: 2. A traveler by some established public conveyance, as a coach, omnibus, steamboat, railroad train, etc.''

In *Dragich* v. *County of Los Angeles* (1939) 30 Cal.App.2d 397 [86 P.2d 669], exemption was denied a fishing vessel, not because it did not carry a cargo of fish, but because it did not carry it for hire. (Followed in *Crivello* v. *County of San Diego,* 50 Cal.App.2d 713 [123 P.2d 899].)

The court noted in *Dragich* that all vessels are used for the conveyance of either property or persons or both.

In *Dragich,* the court observed that the word ''passenger'' is quite generally used in contradistinction to the word ''guest'' (p. 399); that ''passenger'' is defined as ''A traveler by some established public conveyance, as a coach, omnibus, steamboat, railroad train, etc.,'' that it implies carriage for hire.

In dealing with the distinction between one being carried in an automobile for compensation and one carried without

compensation, our courts have used the word "passenger" to denote the former, "guest" to denote the latter. (*McCann* v. *Hoffman* (1937) 9 Cal.2d 279, 282 [70 P.2d 909]; *Sullivan* v. *Richardson* (1931) 119 Cal.App. 367, 373 [6 P.2d 567].)

■ Primarily, "Alalunga" is used for the conveyance of persons, other than its owner, officers and crew. The persons so conveyed are not guests, since they pay for being conveyed, but are passengers.

The amendment in its present form was adopted in 1954. The preceding section 4 of article XIII, adopted in 1932, was to expire by its terms on January 1, 1955.

It, in turn, succeeded the original section 4, adopted in 1914 (two years after the passage of the Panama Canal Act), which was to expire on January 1, 1935.

There was no express holding of an upper court prior to 1954 as to the meaning of "transportation of passengers" as contained in section 4 of article XIII. A trial court in *Kiessig* v. *County of San Diego* (1942) 51 Cal.App.2d 47 [124 P.2d 163], had found sportfishing vessels to be engaged in the transportation of passengers for hire but had denied the claim of exemption because the vessels were of less than 50 tons burden, contrary to the owner's contention. It was on that point that the trial court was upheld.[1] The case is valuable as defining the meaning of "50 tons burden."

■ The carriage of a passenger for hire in common parlance does not call for either (a) a scheduled fixed point of terminus other than the place of departure, or (b) the deposit of the passenger at such another place.

The judgments are affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

The petition of appellant county for a hearing by the Supreme Court was denied March 8, 1967. Traynor, C. J., and Burke, J., were of the opinion that the petition should be granted.

---

[1]Not reversed as plaintiffs assert.