SMITH-RICE HEAVY LIFTS, INC., et al., Plaintiffs and Appellants, v. THE COUNTY OF LOS ANGELES, Defendant and Respondent.

Graham, James & Rolph, Graham & James, Reed M. Williams and Don A. Proudfoot, Jr., for Plaintiffs and Appellants.

Harold W. Kennedy and John D. Maharg, County Counsel, and John D. Cahill, Deputy County Counsel, for Defendant and Respondent.

HERNDON, J.—Plaintiffs appeal from that portion of the judgment which denies them recovery of ad valorem property taxes levied for the years 1962 and 1963 on certain "derrick barges" owned by appellants. Appellants contend (1) that two of their barges were specifically exempted from all such taxes by the terms of article XIII, section 4 of the California

Constitution; and (2) that in any event none of their barges was subject to tax assessment by the County of Los Angeles by virtue of Revenue and Taxation Code, sections 1139 and 1140.

Section 4 of article XIII reads as follows: "All vessels of more than 50 tons burden registered at any port in this State and engaged in the transportation of freight or passengers shall be exempt from taxation except for state purposes.

The indicated sections of the Revenue and Taxation Code provide as follows:

"§ 1139. Except as otherwise provided in this article, when the owner or master of a taxable vessel gives written notice of its habitual place of mooring when not in service to the assessor of the county where the vessel is documented, the vessel shall be assessed only in the county where habitually moored."

"§ 1140. Vessels, except ferryboats, regularly engaged in transporting passengers or cargo between two or more ports and vessels concerning which notice of habitual place of mooring has not been given shall be assessed only in the county where documented."

The determinative facts, insofar as they were not based upon express stipulation, are without essential conflict. Appellants' barges are vessels without means of self-propulsion on which large and powerful cranes have been affixed. An officer of the appellant corporations testified that "the principal reason that the various companies employ . . . [our] barges is because of their capacity or ability to lift heavy weights with their cranes." The barges are used to perform such heavy-lift services as dredging, laying pipe, construction work, lifting cargo and testing equipment. When the cranes located thereon are being operated, the barges remain motionless in the water. They are, however, occasionally moved between lifts if the next item to be lifted is then beyond the reach of their boom or if, after having lifted the item, the place of deposit is beyond such reach. In the latter case the material lifted is placed upon the deck of the barge until it has been shifted to a point permitting its deposit in the desired location.

It is stipulated that appellants' barges (1) are vessels, (2) of more than 50 tons burden, and (3) are registered at a port in this state, i.e., San Francisco. Therefore, the controversy presented by appellants' first contention narrows to the question whether or not the above described activities constitute "the transportation of freight" within the meaning of this

expression in California Constitution, article XIII, section 4. The issue is narrowed even further by appellants' concession expressed in the following manner in their closing brief:

"Appellants do not contend that when the vessels were dredging, laying pipe, engaged in construction work, and testing equipment, they were transporting freight. But appellants do contend that the vessels were engaged in the transportation of freight when they were used for what respondent characterizes as 'lifting cargo'."

Initially appellants had sought recovery of taxes paid on five of their barges, i.e., numbers 5, 7, 15, 16 and 17.[1] However, at the commencement of the trial it was stipulated that barge number 5 was not engaged in the transportation of freight for hire at any time material to either the 1962 or 1963 assessment and barge number 15 was not so engaged in respect to the 1962 assessment. Following the court's pronouncement of judgment, but before entry thereof, it was further stipulated that barge number 15 should be deemed entitled to tax exemption for the year 1963. The reason given for this latter stipulation is that during this period "the crane was removed from the barge and it was under lease by plaintiff to Garvin Tugboat and Salvage Company, and was being used in the hauling of rock and freight." Judgment was entered as to these two barges in accordance with these stipulations.

The parties selected the sample periods January 1 through March 21 of 1962 and 1963 for the purpose of determining the questioned commercial use of the three remaining barges during the years in issue.

Based on this agreement, an exhibit was introduced into evidence that contained an enigmatic daily breakdown of the operations of each of the barges during the selected periods. In summarized form these Tables of Uses contained the following information:

|  | Days Used | Non-Cargo | Cargo (Carry) | Cargo (Non-Carry) |
|---|---|---|---|---|
| Derrick Barge 7-1962 | 24 | 5 | 7 | 15 |
| Derrick Barge 7-1963 | 9 | 5 | 3 | 1 |
| Derrick Barge 16-1962 | 23 | 8 | 4 | 12 |
| Derrick Barge 16-1963 | 28 | 13 | 10 | 5 |
| Derrick Barge 17-1963 | 9 | 2 | 6 | 2 |

[1] The assessment on barge number 17 was only for the year 1963.

The court concluded that barge number 17 was engaged in the transportation of freight in 1963 within the meaning of article XIII, section 4, and therefore was exempt from the tax imposed. Respondent has not appealed from this determination and we express no opinion on its propriety. The court held that the other barges were not engaged in the transportation of freight and were not exempt from taxation.

The only explanation of the material contained in this exhibit, or the anticipated use to be made thereof by the trial court, is found in the following quotation from the reporter's transcript:

"MR. WILLIAMS [counsel for appellants]: Does the Court have the table of uses before it? THE COURT: Yes, I have it now. MR. WILLIAMS: I think a couple of comments would be in order with respect to what the table shows. As the Court will note there are laid out in column form and Mr. Cahill [counsel for respondent] and I have selected the period of January through March as a period to look at the uses of the derrick barges for the purpose of determining their overall use. The total number of days in which the derrick barges were used for hire or for compensation for any purpose are set forth in the first column entitled 'Days Used.' The second column of 'Non-Cargo,' indicates those days on which the barges were used for compensation for a period unrelated to the cargo activities. The third column is one which indicates the days on which the derrick barges were used for compensation, for cargo work and where the cargo was loaded onto the derrick barge and the derrick barge moved from one place to another with the cargo actually on board. The last column 'Non-Carry' indicates the days in which the derrick barges were used for cargo work for compensation where the derrick barge did not, itself, physically move with the cargo on board. Do you have anything you wish to add to that, Mr. Cahill? MR. CAHILL: No, I have nothing to add."

■ The Supreme Court of California in *Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, stated at page 734 [221 P.2d 31, 15 A.L.R.2d 1045] : "Constitutional provisions and statutes granting exemptions from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed. [Citations.] . . . Such rule of strict construction governing property tax exemptions is distinguished from the rule of liberal construction applying in the determination of exemption qualifications under social security and

unemployment compensation acts. [Citations.] Exemption provisions in statutes of the latter character will be liberally construed so as to effectuate their beneficent purpose to encourage and promote organizations seeking classification within the broad scope of the statutory language. [Citations.] This is not, however, the rule to be applied where exemption is claimed from *general property taxation* as provided in our state Constitution. (Art. XIII, § 1, *Watchtower Bible & Tract Soc., Inc.* v. *County of Los Angeles,* 30 Cal.2d 426, 429 [182 P.2d 178].) '' (Italics added.)

██ The rule has long been established in California that a presumption exists in favor of the validity of a tax assessment and that it is incumbent upon a person complaining thereof to prove a case showing the assessment was unauthorized by law. (*Savings & Loan Soc.* v. *San Francisco,* 146 Cal. 673, 678 [80 P. 1086]; *Western Union Tel. Co.* v. *County of Los Angeles,* 160 Cal. 124, 126-127 [116 P. 564]; *Utah Construction* v. *Richardson,* 187 Cal. 649, 654-655 [203 P. 401].) We have concluded that appellants failed to sustain their burden of proof in the instant case.

Neither the Table of Uses introduced as an exhibit nor the explanation thereof quoted *supra* gives any indication of the nature of the barges' movements, or the distances involved in such movements when they were engaged in what is denominated "Cargo (carry)" activities. The officer of appellant corporations who testified on their behalf did assert that "during 1962 and 1963 cargo was transported from one port to another port within the State of California." He did not indicate that such indefinitely described services were performed by any of the barges here involved or that such services were performed during the stipulated "sample periods." Judging from the photographs introduced by appellants as exhibits, it appears that even in their "Cargo (carry)" activities, the movements of the barges were limited to short distances within the harbor itself when the cargo to be lifted from a dock onto the deck of a commercial freighter was situated beyond the effective scope of their boom or when during unloading operations it was desirable to deposit the cargo at a point beyond their stationary reach.

██ However, even if we were to conclude, as the trial court apparently did, that appellants' barges would qualify for the constitutional exemption if their principal operations during the chosen "sample periods" were of the "Cargo

(carry) '' variety, it would not follow that their ''Cargo (non-carry) '' operations entitled them to similar treatment. As previously indicated, appellants concede that when their barges are acting as stationary, though floating, piers for the cranes located thereon, the movement of various items of property for hire by means of the cranes does not constitute the ''transportation of freight'' within the meaning of the constitutional exemption when such ''transportation'' occurs in connection with dredging, laying pipe or construction work. The result should not be different when property similarly moved may be denominated ''cargo'' by reason of the fact that it theretofore has been, or thereafter will be, transported by other vessels. The performance of such symbiotical services does not serve to alter the essential nature of appellants' operations to the extent of converting the floating derricks into the exempt vessels to which they are temporarily attached.

In *Dragich* v. *Los Angeles County,* 30 Cal.App.2d 397 [86 P.2d 669], the court in approaching the problem of interpreting the constitutional provision here under consideration stated at page 399: ''It is at once apparent that said section was not intended to exempt all vessels of the specified tonnage but only those 'engaged in the transportation of freight or passengers.' This phrase must be given some meaning. If it be given the broad meaning contended for by respondents, it would only be necessary that the vessel be used for the conveyance of property or persons. But to give this phrase such meaning would be to render it meaningless as all vessels are used for the conveyance of either property or persons or both.

''In discussing said phrase, respondents lay great stress upon the broad meaning accorded by the authorities to the word 'transportation.' In our opinion, the meaning of other words is of equal if not greater importance in determining the proper interpretation of said phrase. Furthermore the reading of the phrase as a whole is of paramount importance. The word 'freight' has more than one meaning but it generally denotes properly transported by *a carrier* from a consignor to a consignee. (Civ. Code, sec. 2110.) In one accepted sense, it means 'the hire or compensation paid by anyone for the transport of goods . . .' (Webster's New Inter. Dictionary, 2d ed.), and when used to denote the property transported, it carries the definite implication that the transportation is for hire. A similar implication is found in the use of the word 'passengers.' A 'passenger' is defined as 'A traveler *by some*

*established public conveyance,* as a coach, omnibus, steamboat, railroad train, etc.' . . .'' (Italics added.)

In the instant case, when appellants' derricks are operating upon their stationary barges, they are not engaged as ''a carrier'' transporting ''freight.'' Although the items of personal property being lifted and deposited by appellants' cranes during their ''Cargo (non-carry)'' operations may properly be characterized as ''freight,'' such characterization stems from their past or future relationship to the vessel being serviced rather than their relationship to appellants' barges.

As noted by respondent, the history of the constitutional amendment here under consideration, particularly the arguments to the voters at the time of its initial adoption in 1914, and readoption in 1932, makes clear that the principal purpose behind the creation of this tax exemption was to insure that California obtained, and thereafter retained, its fair share of the increased maritime industry resulting from the opening of the Panama Canal and the national effort to increase the size of America's merchant fleet in the face of the then impending first World War. The obvious intent of its proponents was to encourage persons and corporations owning vessels engaged in interstate and international operations to establish their headquarters and home ports in California rather than in other coastal states which had theretofore extended tax benefits to such maritime operations.[2] (Cf. *Dragich* v. *Los Angeles County, supra,* 30 Cal.App.2d 397, 398; *Alalunga Sport Fishers, Inc.* v. *County of San Diego,* 247 Cal.App.2d 663, 666 [55 Cal.Rptr. 875]; *Star etc. Boat Co.* v. *County of San Diego,* 163 Cal.App.2d 534, 537 [329 P.2d 716] ; *County of Los Angeles* v. *Craig,* 38 Cal.App.2d 58, 61 [100 P.2d 818].)

However, as observed in *Alalunga* at page 667: '' [I]t is equally obvious that that purpose is not exclusively served by the language of the amendment itself.'' As a result this constitutional exemption has been given a scope considerably broader than that which respondent urges was the limited initial intent of its authors. Further, in *County of Los Angeles* v. *Craig, supra,* 38 Cal.App.2d at pp. 60-61, the court

---

[2]See Oregon Constitution, article IX, section 1b, which since has been wisely replaced by Oregon Revised Statutes 308.256, 308.515, 488.732 et al., which present a complete and integrated tax schedule appropriate to all forms of ships and shipping.

held that the word "registered" in article XIII, section 4, had not been used in its technical sense. From this holding it follows that the specified exemption is not restricted to "seagoing vessels" engaged "only in trade with foreign countries" (46 U.S.C.A. § 11), and may include "licensed or enrolled" vessels "employed in the coasting trade or fisheries" (46 U.S.C.A. § 251). Therefore, in *Star etc. Boat Co.* v. *County of San Diego, supra,* 163 Cal.App.2d at p. 539, the exemption was extended to certain oil carrying barges and the tugs which towed them in transporting such oil between the ports of Los Angeles and San Diego.

Nevertheless, as indicated by the above quoted comments of the court in *Dragich* v. *Los Angeles County, supra,* 30 Cal. App.2d 397, 399, article XIII, section 4 "was not intended to exempt all vessels of the specified tonnage but only those 'engaged in the transportation of freight or passengers'." The court in *Dragich* refused to extend the exemption to certain commercial fishing boats despite the fact that they transported cargoes of fish taken in their own fishing operations. (See also *Crivello* v. *County of San Diego,* 50 Cal.App.2d 713 [123 P.2d 899].)

The court in *Dragich* stated at page 398: "[The fishing boats of plaintiffs] were engaged in fishing and were not engaged in any other business." With equal logic it may be said in the instant case that appellants' derrick barges were engaged in heavy lift operations and were not engaged in any other business.

Appellants place their primary reliance upon the recent decision in *Alalunga, supra,* 247 Cal.App.2d 663, wherein the tax exemption was held to extend to certain sport fishing vessels of the required tonnage that carried passengers from a particular dock in the San Diego harbor to various fishing grounds in the vicinity of the Coronado Islands or in open waters off San Diego. Although the passengers did not know their exact destination when they left the dock, they did know that following a day's fishing from the deck of the ships, they would be returned to the same dock from which they had departed.

However, we are not persuaded by appellants' arguments that *Alalunga* is factually analogous to the instant case. It is beyond reasonable dispute that the persons boarding the boats involved in *Alalunga* were passengers who, for specified monetary consideration, were furnished transportation thereon by water to and from various points on the ocean as conditions

favorable to fishing made appropriate. Appellants' derricks performed no such functions when, in a stationary position, they lifted various items of property to and from docks and other cargo-carrying vessels. In order to place the operations of the appellants' derrick barges into the *Alalunga* picture, we would have to imagine them lifting the passengers from the dock to the deck of the fishing boats there involved, or serving as a stationary, though floating, gangplank over which the passengers walked in order to board the vessels which were thereafter to transport them by sea to their chosen fishing sites. We feel confident that such peripheral operations would not warrant their receiving the benefit of the exemption extended to the fishing ships themselves because they do not amount to the type of transportation by vessel contemplated by the constitutional amendment.

Appellants' second assignment of error is based upon their contention that in any event Revenue and Taxation Code, sections 1139 and 1140 preclude taxation by Los Angeles County of their derrick barges permanently situated therein. Appellants argue that although certain of their derrick barges are taxable since they are not primarily engaged in the transportation of freight and therefore not within the purview of article XIII, section 4, nevertheless since they are documented in San Francisco, they cannot be taxed elsewhere except upon their own election.

The trial court rejected this argument and concluded that these sections of the Revenue and Taxation Code were unconstitutional in that they violated article XIII, section 10 of the California Constitution which provides: "*All property, except as otherwise in this constitution provided, shall be assessed in the county, city, city and county, town or township, or district in which it is situated,* in the manner prescribed by law." (Italics added.)

On this appeal appellants seek to overcome this holding by citing certain language contained in article XIII, section 14, relating to *taxation for state purposes* which, they assert, gives the Legislature the power to impose a different rule without running counter to the provisions of section 10 since such method of taxation is "otherwise in this constitution provided." They rely on that portion of section 14 which provides:

"The Legislature shall have the power to provide for the assessment, levy, and collection of taxes upon all forms of

tangible personal property . . . in such manner, and at such rates, as may be provided by law . . . and may exempt entirely from taxation any or all forms, types or classes of personal property.''

We seriously doubt the soundness of appellants' argument in this respect. However, we find it unnecessary to reach the question it poses since we believe that Revenue and Taxation Code, sections 1139 and 1140, properly interpreted, do not preclude taxation of appellants' derrick barges by the County of Los Angeles.

■ Generally speaking, the right to tax is founded upon the concept that ''it is in return for the benefit received by the person who pays it or by the property assessed.'' (46 Cal.Jur.2d, § 11, p. 494.) ■ Where property is situated exclusively within one taxing authority, in this instance a county, article XIII, section 10, requires that it be assessed only in that county from which it derives benefits and not in another county from whom it receives no benefits. That the Legislature fully acquiesces in such concept is made clear by the terms of Revenue and Taxation Code, section 404, which provides: ''*All taxable property*, except State assessed property, *shall be assessed by the assessing agency of the taxing agency where the property is situated.*'' (Italics added.)

As observed in the Code Commissioners' Note to section 1139, this section was intended to establish as between counties an artificial tax situs analogous to the ''home port'' rule applicable to the several states with regard to ships moving between different states or different foreign countries.[3] (*Ayer & Lord Tie Co. v. Kentucky*, 202 U.S. 409, 423 [50 L.Ed. 1082, 1087, 26 S.Ct. 679]; *Southern Pac. Co. v. Kentucky* ex rel. *Alexander*, 222 U.S. 63, 67-68 [56 L.Ed. 96, 97-98, 32 S.Ct. 13];, *Scandinavian Airlines System, Inc. v. County of Los Angeles*, 56 Cal.2d 11 [14 Cal.Rptr. 25, 363 P.2d 25]; *Cali-*

---

[3]Former Political Code, section 3644, from which both our present Revenue and Taxation Code sections are derived, provides:

''All vessels not exempt from taxation under the provisions of the Constitution, except as provided below, shall be assessed and their taxes paid only in the county, or city and county, in which they make their home port or their habitual place of anchorage or mooring when not in service when the assessor of the county or city and county wherein such vessels are registered is given notice in writing, by the owner or master of such vessel, as to such place of anchorage or mooring.

''Such vessels as are regularly engaged in transporting passengers or cargo between two or more ports, except ferryboats, and vessels concerning which no such notice as hereinabove provided shall have been given, must be assessed and the taxes thereon paid only in the county or city and county where the same are registered, enrolled, or licensed.''

*fornia etc. Co.* v. *City & County of San Francisco,* 150 Cal. 145 [88 P. 704]; *Olson* v. *San Francisco,* 148 Cal. 80 [82 P. 850, 113 Am.St.Rep. 191, 7 Ann. Cas. 443, 2 L.R.A. N.S. 197]; *San Francisco* v. *Talbot,* 63 Cal. 485; *People* v. *Niles,* 35 Cal. 282.)

However, even as between separate sovereign states the artificial tax situs created by the home port rule was inapplicable whenever the vessel itself had acquired a permanent situs within a jurisdiction other than that in which it was documented and its owner was domiciled. ▊ We believe that section 1139 was never intended to adopt a different rule as between counties. We believe it was designed to apply only to vessels having no actual, permanent situs sufficient to permit them to be treated in accordance with the basic rule promulgated in article XIII, section 10, and Revenue and Taxation Code, section 404.

▊ Insofar as the vessels in the instant case are concerned, Los Angeles County is far more than their "habitual place of mooring *when not in service.*" (§ 1139.) (Italics added.) For from five to ten years preceding the instant action appellants' derrick barges have been physically within the County of Los Angeles and receiving the benefit of fire and police services therefrom even *when in service.* Sections 1139 and 1140 are therefore inapplicable to the instant case and the question of their constitutionality in regard to vessels whose movements preclude their achieving a permanent situs for tax purposes need not now be decided.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied December 12, 1967, and appellants' petition for a hearing by the Supreme Court was denied January 17, 1968.