[Civ. No. 36674. Second Dist., Div. One. Mar. 31, 1971.]

CROWLEY LAUNCH AND TUGBOAT CO.,
Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

438

COUNSEL

John D. Maharg, County Counsel, and Lynard C. Hinojosa, Deputy County Counsel, for Defendant and Appellant.

Graham & James, Reed M. Williams and Don A. Proudfoot, Jr., for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—This is an appeal from a judgment of the superior court granting respondent a refund of personal property taxes paid upon the tugboat Navigator for the taxable years 1961 and 1962. We reverse the judgment.

The essential facts controlling determination of the issue presented by the case at bench are not in dispute. They are precisely and cogently set forth in a memorandum opinion of the trial judge which we here adopt in part. During the pertinent period of time, Navigator was employed almost exclusively as a harbor tug. For inbound ships, her services usually began in the outer harbor of Los Angeles or Long Beach. When a cargo or passenger vessel arrived in the outer harbor, Navigator and perhaps other tugs would be made fast to the ship. The tugs would then assist the ship in navigating the waters and channels of the harbor. Upon arrival at the ship's assigned berth, the tugs would assist her in coming alongside the dock preparatory to mooring. After the vessel was safely moored, the tugs would proceed to other work. Navigator and other tugs were also used to assist

ships in undocking and in navigation of the channels and other waters of the harbor at the commencement of an outbound voyage and in shifting from one berth to another. Navigator carried no passengers or cargo aboard. There were no dealings between consignors or consignees of cargo or of passengers with the management. of Navigator. Arrangements for employment of the tug were made by the master or agent of the ship and the tug was not concerned with the presence, nature or amount of cargo or passengers aboard any ship assisted except as the nature of cargo might affect the safety of the tug.

In performing her services, Navigator supplied motive power for moving the ship, at times with the assistance of the ship's engines and at other times without assistance. The services of tugs such as Navigator are essential to the efficient handling of ships and other water-borne commerce in Los Angeles and Long Beach harbors. They have been routinely used for many years. During the time that tugs are secured to the ship, the tug and the ship, in most situations, operate as a single unit with the tug supplying motive power and means directing the course of the ship. In that physical sense, the tug and the ship move and act as a single unit during the time the tug is secured alongside. During the period that the tug is secured to the ship, the unit is always under the control of the ship's master who is usually assisted by a port pilot. The activities of the tug are directed by the master or pilot and the master of the tug has no authority to direct the manner in which the ship shall navigate or maneuver.

California Constitution article XIII, section 4, provides: "All vessels of more than 50 tons burden registered at any port in this State and engaged in the transportation of freight or passengers shall be exempt from taxes except for State purposes." It is conceded that Navigator is a vessel of more than 50 tons burden registered at a port in California and that the property taxes assessed against the tug are not for state purposes. The narrow issue presented by the record before us is whether Navigator is "engaged in the transportation of freight or passengers" within the meaning of article XIII, section 4.

California precedent, which has considered the critical language of article XIII, section 4 of our Constitution, has determined that a tugboat employed as the means of locomotion of oil barges owned by the same company from the Los Angeles area to San Diego is engaged in the transportation of freight (*Star etc. Boat Co.* v. *County of San Diego*, 163 Cal.App.2d 534 [329 P.2d 716], hg. den.) but that a vessel in the form of a floating unpowered barge containing a large crane used to unload cargo from ocean-going freighters is not. (*Smith-Rice Heavy Lifts, Inc.* v. *County of Los Angeles*, 256 Cal.App.2d 190 [63 Cal.Rptr. 841], hg. den.)

The distinction between *Star Boat* and *Smith-Rice* appears to lie in the fact that in *Star Boat* the vessel was used as a direct means of transportation of freight in conjunction with a barge under its control while in *Smith-Rice* the service of the vessel claimed exempt from tax was in aid of the transportation of freight but not the immediate transportation itself. Thus in *Star Boat,* the court states: "In the instant case the record shows that plaintiff was engaged in the business of transporting freight rather than towage" (163 Cal.App.2d at p. 538), while in *Smith-Rice,* it says: "Although the items of personal property being lifted and deposited by appellants' cranes during their 'Cargo (non-carry)' operations may properly be characterized as 'freight,' such characterization stems from their past or future relationship to the vessel being serviced rather than their relationship to appellants' barges." (256 Cal.App.2d at p. 197.)

The facts of the case at bench establish that it is controlled by *Smith-Rice* rather than *Star Boat.* While Navigator's operations aided in the transportation of persons and property, the characterization of those persons and that property as passengers and freight stemmed from the relationship to the vessel being serviced rather than to a relationship with the tug.

■■ Respondent contends that "property" is synonymous with "freight" as that term is used in article XIII, section 4. From that premise, it argues that the exemption from tax applies because Navigator transports property in the form of the vessels propelled by her. Respondent's premise has been rejected by earlier Court of Appeal decisions. In holding that a commercial fishing vessel transporting its catch to its home port was not engaged in the transportation of freight, the court refused to accept the argument that "freight" means "any property" stating: "The word 'freight' has more than one meaning but it generally denotes property transported by a carrier from a consignor to a consignee." (*Dragich* v. *Los Angeles,* 30 Cal.App.2d 397, 399 [86 P.2d 669]; see also *Crivello* v. *County of San Diego,* 50 Cal.App.2d 713 [123 P.2d 899].)

The distinction between "freight" and "property" drawn by precedent accords with the canon that constitutional and statutory exemptions from general property taxation are to be strictly construed. (*Cedars of Lebanon Hosp.* v. *County of L. A.,* 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].)[1] The difference in meaning of the two words distinguishes from the

---

[1]Respondent contends that the purpose of article XIII, section 4 of the California Constitution is that of attracting shipping which will utilize a California facility as a home port. (*Smith-Rice Heavy Lifts, Inc.* v. *County of Los Angeles, supra,* 256 Cal. App.2d 190, 197.) It argues that the purpose is best served by applying the tax exemption provided in the Constitution to Navigator. The argument does not flow from the purpose of the exemption. Harbor tugs must locate where the ships which are their source of income make port. They are not free to adopt an out-of-state base

case at bench the cases relied upon by respondent which hold in other contexts that a tug towing a vessel is engaged in the transportation of property. (See e.g. *White* v. *Steam-Tug Mary Ann,* 6 Cal. 462; cf. *Sturgeon Bay & L. M. Ship Canal & Harbor Co.* v. *Leathem,* 164 Ill. 239 [45 N.E. 422].)

We conclude that the exemption from tax provided by California Constitution article XIII, section 4, is inapplicable to Navigator.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 26, 1971.

---

of operations for property tax considerations. The economic impact of the result which we here reach upon shipping is indirect. It has no different effect than the property tax upon the multitude of land-based port facilities or barge-based cranes.