[Civ. No. 43693. First Dist., Div. One. Mar. 20, 1979.]

KAISER STEEL CORPORATION, Plaintiff and Appellant, v.
COUNTY OF SOLANO et al., Defendants and Respondents.

COUNSEL

Chickering & Gregory, John P. Macmeeken and Kenneth Drexler for Plaintiff and Appellant.

Milton Goldinger, County Counsel, Billy B. Burton, Assistant County Counsel, J. Paul Coan, Deputy County Counsel, John M. Powers, City Attorney, William R. Galstan, Assistant City Attorney, Kilpatrick, Peterson & Ely and Dwight C. Ely, City Attorney, for Defendants and Respondents.

OPINION

**RACANELLI, P. J.**—On appeal from a summary judgment entered in favor of respondents, the single question presented is whether the provisions of Revenue and Taxation Code section 209.5[1] are restricted solely to vessels used or to be used in the transportation of freight or passengers as determined below. Our analysis compels a negative answer requiring reversal.

*Facts*

The facts relevant to our discussion are undisputed and recited as follows:

In 1974 Kaiser Steel Corporation (Kaiser) undertook construction at its Vallejo and Benicia marine yards of two massive semisubmersible offshore drilling vessels at a contract price in excess of $50 million. Kaiser claimed the statutory exemption for fiscal year 1976-1977 for the vessels then under construction (and related parts and materials) as of the March 1, 1976, lien date; the exemption was denied by the Solano County Assessor in placing the vessels on the assessment roll for the taxable year. Thereafter, Kaiser paid under protest taxes assessed in an amount exceeding one-half million dollars and filed an application for adjustment with the county board of equalization; the application was ultimately

---

[1]Section 209.5 of the Revenue and Taxation Code (to which all statutory references are hereafter made unless otherwise indicated) provides in pertinent part: "All right, title or interest in or to any vessel of more than 50 tons burden or 100 tons displacement, and the materials and parts held by the builder of the vessel at the site of construction for the specific purpose of incorporation therein, shall be exempt from taxation . . . while the vessel is under construction within this State."

denied. At the equalization hearing, the assessor stipulated to the material facts underlying Kaiser's subsequent complaint for recovery of the taxes paid under protest. (See § 5138.) Based upon the uncontroverted factual allegations,[2] the trial court thereafter granted respondents' motion for summary judgment on the ground that the statutory exemption, read in conjunction with related constitutional and statutory provisions, was limited to the described vessels engaged in transportation of freight or passengers. Following entry of summary judgment, this appeal ensued.

I

We begin our discussion by examining the pertinent constitutional and statutory provisions governing tax exemption of certain vessels. Under the existing constitutional scheme, "[U]nless otherwise provided . . . [a]ll property is taxable . . . ." (Cal. Const., art. XIII, § 1, subd. (a).) Property expressly exempted from taxation includes "Vessels of more than 50 tons burden in this State and engaged in the transportation of freight or passengers" (Cal. Const., art. XIII, § 3, subd. (*l*)), as well as any tangible personal property classified as exempt by a two-thirds vote of the Legislature (Cal. Const., art. XIII, § 2). Upon adoption of the Revenue and Taxation Code in 1939, section 209 provided for exemption of certain vessels from taxation (except for state purposes) "as specified in subdivision (*l*) of Section 3 [formerly § 4], Article XIII of the Constitution."

The constitutional provision whose intended purpose is to aid the state's shipping industry (*Star etc. Boat Co.* v. *County of San Diego* (1958) 163 Cal.App.2d 534, 537 [329 P.2d 716]) has been strictly construed to encompass only vessels meeting the specified tonnage requirement that are actually engaged in the commerce of transporting freight or passengers (*Crowley Launch & Tugboat Co.* v. *County of Los Angeles* (1971) 16 Cal.App.3d 437 [94 Cal.Rptr. 150] [harbor tugboat excluded]; *Smith-Rice Heavy Lifts, Inc.* v. *County of Los Angeles* (1967) 256 Cal.App.2d 190 [63

[2]All of the material allegations of the complaint were admitted with the exception of paragraphs XVII and XX relating to qualifying definitions of watercraft and tonnage-displacement capacity and respondent cities' reservations concerning the county assessor's stipulations. Kaiser's contention concerning the validity of the pleaded denials (see *Los Angeles* v. *Superior Court* (1941) 17 Cal.2d 707 [112 P.2d 10], and Gov. Code, §§ 51500-51501) is academic in light of the respondents' unqualified concession on appeal that the material factual issues are undisputed, including the definition of oil-drilling vessels as "watercraft . . . capable of being used as a means of transportation on water. . . ." (§ 130, subd. (a)), and that the issue to be decided rests solely upon a *matter of statutory interpretation.*

Cal.Rptr. 841] [cargo unloading barge excluded]; *Dragich v. Los Angeles* (1939) 30 Cal.App.2d 397 [86 P.2d 669] [fishing boat excluded]; accord *Crivello v. County of San Diego* (1942) 50 Cal.App.2d 713 [123 P.2d 899]; but cf. *Alalunga Sport Fishers, Inc. v. County of San Diego* (1967) 247 Cal.App.2d 663 [55 Cal.Rptr. 875] [sportfishing boat included as a vessel engaged in transporting passengers for hire]). Nearly 20 years later, the Legislature enacted section 209.5 in order to provide "an additional exemption for vessels of more than 50 tons burden while under construction . . . [whose legislative purpose][3] . . . was to promote . . . California's economy by stimulating ship construction." (*Favalora v. County of Humboldt* (1976) 55 Cal.App.3d 969, 973 [127 Cal.Rptr. 907].)

■ Kaiser argues that in enacting the statute *sub judice,* an intention was clearly expressed to provide a separate and distinct form of interim tax relief during intrastate construction of any major vessel without restriction as to the nature of the contemplated maritime use. Respondents, in refuting that argument, now assert (as they did below) that the section must be narrowly interpreted in context with the earlier statutory enactment (§ 209) so that "only the kind of vessels described in the Constitution" are exempt, namely: vessels fulfilling the requisite tonnage requirement used, and by implication *to be* used, in transporting freight or passengers. The assertion is unconvincing; we are persuaded by the forceful logic inherent in Kaiser's argument.

## II

■ While it is generally recognized that tax exemption provisions must be strictly construed in favor of the taxing agency and against the

---

[3]That purpose was articulated in the following pertinent language: "The Legislature recognizes that preservation of the shipbuilding and ship repair industries is of great importance to the national defense and to the economic and industrial development of this State. Since the end of World War II there have been but very few major shipbuilding contracts awarded in California. The result has been a depressed condition in the shipbuilding and ship repair industries. . . . One of the primary reasons for failure of California shipyards to receive major ship construction awards is that ships under construction in this State are subject to assessment of a personal property tax. This tax is not assessed against ships under construction in the other principal states in which competing shipyards are located. Unless this substantial disadvantage is removed it appears that California shipyards cannot compete successfully for a share of the nationwide new ship construction. In order to remove this material obstacle to successful competition for a fair share of ship construction, and for the purpose of promoting the national defense and the economic and industrial development of this State, it is necessary to declare the legislative intent to exempt from taxation, except for state purposes, major vessels under construction within this State." (Stats. 1958, First Ex. Sess., ch. 48, § 1, p. 251; Stats. 1959, ch. 283, § 1, p. 2190.)

taxpayer (see *Santa Fe Transp.* v. *State Board of Equal.* (1959) 51 Cal.2d 531, 539 [334 P.2d 907]; *Alalunga Sport Fishers, Inc.* v. *County of San Diego, supra,* 247 Cal.App.2d 663, 666), nonetheless such construction must be fair and reasonable with due regard for the ordinary meaning of the language used and the objective sought to be accomplished. *(Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 735 [221 P.2d 31, 15 A.L.R.2d 1045].) Moreover, it is equally well settled that fundamental rules of statutory construction require ascertainment of the legislative intent "so as to effectuate the purpose of the law [and] 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.]" *(Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Where the statutory language is clear, "there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.] 'An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein.' [Citation.]" *(Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 7 [125 Cal.Rptr. 408].) Where the Legislature omits a particular provision in a later enactment related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction. (See *Signal Oil & Gas Co.* v. *Bradbury* (1960) 183 Cal.App.2d 40, 51 [6 Cal.Rptr. 736].)

 Guided by the foregoing principles, it appears unequivocal that the subject legislation enacted under express constitutional authority (art. XIII, § 2)[4] was plainly intended to provide a separate form of local tax relief for the California shipbuilding industry during construction of *all* types of vessels meeting the prescribed tonnage or displacement minimum. Such a construction neither conflicts with nor detracts from the purpose of section 209 exempting operational vessels used in the manner specified in the parallel constitutional provision (art. XIII, § 3, subd. (*l*)) in order to assist the California shipping industry. *(Alalunga Sport Fishers, Inc.* v. *County of San Diego, supra,* 247 Cal.App.2d 663, 667.) Rather, the statute under review is designed to achieve a comparable benefit for local shipbuilding industry by providing an "additional exemption" for such major vessels while under construction (see *Favalora* v. *County of Humboldt, supra,* 55 Cal.App.3d 969, 973) without limitation

---

[1]Respondents do not challenge the constitutional validity of the section in question.

as to their intended future use. Indeed, it can only apply *during* construction and not, as respondents argue, while engaged in the transportation of freight or passengers. To construe the statute as respondents propose would render it ineffective and meaningless, contrary to well-established principles of construction. (Code Civ. Proc., § 1858; see *Carter* v. *Seaboard Finance Co.* (1949) 33 Cal.2d 564, 573 [203 P.2d 758]; *City of Plymouth* v. *Superior Court* (1970) 8 Cal.App.3d 454, 466 [96 Cal.Rptr. 636].)

Had the Legislature intended to restrict such transient tax relief solely to vessels intended to be used upon completion in freight or passenger commerce, then it is reasonable to conclude it would have expressly so provided in enacting the special measure. (See *Santa Fe Transp.* v. *State Board of Equal., supra,* 51 Cal.2d 531, 538-539 [quoting *Bekins Van Lines, Inc.* v. *Johnson* (1942) 21 Cal.2d 135, 141 (130 P.2d 421)].) ▉ It is not a function of the reviewing courts to read into the statute a provision the Legislature plainly intended to omit. (*Signal Oil & Gas Co.* v. *Bradbury, supra,* 183 Cal.App.2d 40, 51.)

▉ Accordingly, we hold that the exemption afforded under section 209.5 applies to any vessel (as defined by statute) satisfying minimum tonnage or displacement requirements while under construction within the state without regard to the nature of its intended maritime use.

The judgment is reversed for further proceedings not inconsistent with the views expressed herein.

Elkington, J., and Newsom, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 17, 1979.