Filed 7/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CALIFORNIA PUBLIC RECORDS RESEARCH, INC., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> COUNTY OF ALAMEDA, <br><br>     Defendant and Appellant. | A152843, A153786 <br><br> (Alameda County <br> Super. Ct. No. RG14740491) |

We consider a county's exercise of its statutorily delegated discretion to set fees for copies of official records. Government Code section 27366 provides that the fee "shall be set . . . in an amount necessary to recover the direct and indirect costs of providing the product or service."[1] In 2010, the Alameda County Board of Supervisors (the County) adopted an ordinance charging $3.50 per page for copies of official records from the Clerk-Recorder's Office. In 2014, California Public Records Research, Inc. (CPRR) filed a petition for a writ of mandate under Code of Civil Procedure section 1085 arguing the fee violated section 27366. In 2017, the trial court granted the petition.

In these consolidated appeals, the County challenges the order granting the petition, the court's subsequent issuance of a preliminary injunction against the County, and its award of attorney fees to CPRR. We reverse the order granting the petition. First, CPRR fails to establish the County's calculation of recoverable "indirect costs" violates section 27366. Second, the County did not act arbitrarily, capriciously, or otherwise abuse its discretion when it determined that charging $3.50 per page was necessary to recover the direct and indirect costs of making copies. Because we reverse the order

---

[1] All undesignated statutory references are to the Government Code.

granting the petition, we also vacate the subsequent orders granting a preliminary injunction and awarding attorney fees to CPRR.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts relevant to the issues on appeal. We provide additional factual and procedural details in the discussion of the parties' specific claims.

I.      *The Clerk-Recorder's Office*

The Clerk-Recorder's Office processes and maintains the County of Alameda's public records, including documents affecting real property, business records, and vital records, such as marriage, birth and death certificates. The office maintains approximately 300 different types of recorded documents in both digital and microfilm formats. The office is required to maintain these records so that copies can be made available when requested. There are numerous costs associated with this service, including the costs of storage and maintenance of recorded documents on microfilm, and the costs associated with digitalization, salaries and benefits of employees.

II.      *The County's Adoption of the Ordinance Increasing Fees for Copies*

On June 23, 2010, the County adopted an ordinance increasing various fees charged by the Clerk-Recorder's Office, including an increase of the fee for copies of records from $1.50 per page to $3.50 per page. The County's decision was based on fee studies conducted in 2009 and 2010. As explained in a declaration, "The methodology of the [2009] Fee Study calculated Alameda County's direct and indirect costs and reduced them to the total cost of duplicating each page."

With regard to direct costs, the County based its calculation on the salary and benefits of an "Auditor Associate III (now known as Clerk-Recorder Specialist III)." This position is the one that "most commonly performs copies of Official Record documents." The average time to process a page was 2.68 minutes per page, which included retrieving print requests, inputting data, and, for pre-1969 documents, retrieving the document from the microfiche. The average salary per minute of an Auditor Associate III was $0.53. As a result, the average direct salary cost to the County to make copies on a per page basis was $1.42 (2.68 minutes times $0.53). The County also

2

factored in the cost of paying benefits to these employees.

The indirect costs of providing copies included the salaries and benefits of administrative staff and management, services and supplies for the Clerk-Recorder's Office, and " 'County Indirects,' " which included "costs to the Clerk-Recorder's Office arising from other County departments." Other indirect costs included the costs of "equipment maintenance, modular furniture, other professional services, data processing services and supplies, systems development supplies, alarm services, mail/postage charges, messenger services, county facility use charges, intra fund, and indirect costs from the county wide cost plan." The County also included the cost of regular paper. Based on these direct and indirect costs, the total cost to the County to copy a recorded document was calculated at $3.60 per page, which is 10 cents more than the amount the County decided to charge for copies.

In 2010, the County conducted a second fee review "in anticipation of the fee increase ordinance." This fee review "found a per minute cost of $4.08" per page, based primarily on "increases in salary and benefits costs in the intervening year." Nonetheless, the County kept the proposed fee for copies of official records at $3.50 per page. In addition, the County conducted a comparison with the fees charged by neighboring counties, and found their fees "ranged from $1.00 per page to $7.00 per page, with Alameda County's $3.50 proposed rate falling squarely within this range."

III.    *CPRR's Legal Challenge to the Ordinance*

In September 2014, CPRR filed its writ petition alleging the County's fees for copies of recorded documents "recoup[ed] costs in excess of those permitted by [section] . . . 27366." CPRR is a "non-profit, public-benefit corporation." It is "organized to promote the public interest by seeking to reduce the costs of government and to provide education and information regarding governmental activities." In 2014, CPRR purchased a copy of a document from the County's Clerk-Recorder's Office and was charged $3.50 per page, "the fee in effect at the time, and presently."

In its first cause of action, CPRR accused the County of violating its mandatory duty under section 27366 to limit fees for copies to an amount that does not exceed direct

3

and indirect costs.  In its second cause of action, CPRR contended the fee was an unconstitutional tax.  CPRR sought the issuance of a writ directing the County to collect fees "limited to recoupment of, only, the costs of paper, ink and toner to print and copy the documents; the photocopier used to make the copy and the cost of its operation and maintenance; the salary and benefits of the person making the copy; and costs necessarily associated with the retrieval, inspection, redaction and handling of the document being copied."

In January 2015, the County filed its answer.  In May 2015, CPRR filed a memorandum in support of the petition.  In opposition, the County explained the fees were based on cost studies conducted in 2009 and 2010.  After supplemental briefing, the court held a hearing on the petition in April 2017.

IV.      *The Trial Court's Order Granting the Petition and Its Subsequent Orders*

In its order, the court found the County's fee of $3.50 per page was "unlawful under [section] 27366 as arbitrary, capricious, or entirely lacking in evidentiary support." The court stated the County "did not exercise its discretion under a proper interpretation of . . . [section] 27366."  According to the court, the County's indirect costs were "over inclusive" and did not "fairly reflect the county's cost of providing the copies."  But the court found CPRR's claim under article XIII C of the California Constitution had "no merit."  In October 2017, the court entered judgment against the County.

In November 2017, the court granted CPRR's motion for a preliminary injunction. In January 2018, the court awarded CPRR $268,154.51 in attorney fees.  The County appeals the judgment, the order granting an injunction, and the fee award.

                                                    DISCUSSION

On appeal, the County contends it "did not abuse its discretion by enacting a fee schedule encompassing indirect costs authorized by Government Code section 27366." We agree and reverse.

I.      *Standard of Review*

CPRR petitioned for issuance of a writ of mandate pursuant to Code of Civil Procedure section 1085.  The inquiry in a traditional mandamus proceeding, in which the

4

trial court reviews quasi-legislative acts, is limited to whether the local agency's action was arbitrary, capricious, or entirely without evidentiary support, and whether it failed to conform to procedures required by law. (*Pitts v. Perluss* (1962) 58 Cal.2d 824, 833.) "[T]he petitioner bears the burden of pleading and proving the facts on which the claim for relief is based." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153.) "Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion. [Citation.] In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld." (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799.)

"In an appeal from a traditional mandate proceeding . . . , the trial court's findings as to foundational factual matters are conclusive if supported by substantial evidence. Thereafter, the appellate court performs essentially the same function as the trial court—it determines if the agency's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to established public policy, unlawful or procedurally unfair." (*Helena F. v. West Contra Costa Unified School Dist.*, *supra*, 49 Cal.App.4th at p. 1799.) "The arbitrary and capricious standard of review employed under Code of Civil Procedure section 1085 is more deferential to agency decisionmaking than the substantial evidence standard. . . . We use the arbitrary and capricious standard to review quasi-legislative decisions resulting from an agency's exercise of its statutorily delegated policymaking discretion. . . . [¶] . . . Nevertheless, the proper interpretation of a statute is ultimately the court's responsibility." (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 461–462.) We independently review "the trial court's conclusions on questions of law, which include the interpretation of a statute and its application to undisputed facts." (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246

5

Cal.App.4th 1432, 1443 (*Stanislaus*).)[2]

      II.     *"Indirect Costs" Under Section 27366*

Section 27366 provides that the fee for copies of official records "shall be set by the board of supervisors in an amount necessary to recover the direct and indirect costs of providing the product or service or the cost of enforcing any regulation for which the fee or charge is levied." This case hinges on what the Legislature meant by "indirect costs."

      A.     *The Trial Court's Analysis of "Indirect Costs"*

In reviewing the County's decision, the court began by noting that published Court of Appeal decisions are in conflict regarding the meaning of "indirect costs." In *Stanislaus*, *supra*, 246 Cal.App.4th at pages 1455–1456, the Fifth District Court of Appeal found the term ambiguous, and it resolved the ambiguity "by a general test that requires such costs to be reasonably attributed to (i.e., reasonably related to) providing copies and excludes costs that cannot be reasonably attributed to the service of providing copies." But in *California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150 (*Yolo*), the Third District Court of Appeal interpreted "indirect costs" more broadly, concluding "the term 'indirect costs' has an established and generally accepted meaning in the context of governmental accounting and fee setting legislation, and includes overhead and operating costs not specifically associated with the production of copies." (*Id.* at p. 174.)

The court sided with *Stanislaus* over *Yolo*. It determined that section 27366 "is directed to ensuring that public agencies can charge, and customers are charged, a fee that is reasonably related to the service performed." To prevent copying fees from becoming an unconstitutional tax, the court found the amount charged could " 'not exceed the

---

[2] CPRR contends the County's adoption of the ordinance was legislative, not quasi-legislative. We fail to understand the significance of this distinction. Instead, the relevant distinction for standard of review purposes is whether the local action was quasi-adjudicatory or quasi-legislative. (See *Pitts v. Perluss*, *supra*, 58 Cal.2d at pp. 833–834 [explaining difference between our independent review of quasi-adjudicatory decisions in administrative writ proceedings and our more deferential review of quasi-legislative decisions in traditional writ proceedings].)

reasonable costs to the local government of providing the service or product.' " The court endeavored to read section 27366 "to give effect to all the words in the statute." It described the fees for copies as "user fees," not "regulatory fees," and, based on this distinction, the court was persuaded that the indirect costs had to be "reasonably related to the agency's cost of providing copies to the members of the public who want copies."

The court considered the definition of "indirect costs" provided in accounting manuals, including the federal Office of Management and Budget Circular A-87 (the OMB Circular), but stated "these accounting standards are not persuasive for interpreting the statute." At the same time, the court found the County "certainly could have relied in good faith on those accounting standards." The court rejected an interpretation of *Stanislaus*, *supra*, 246 Cal.App.4th at page 1460, that would permit recoverable indirect costs to include overhead costs.

Applying this interpretation of "indirect costs," and relying on "the *Stanislaus* standard that a county's copying fees must fairly reflect the county's cost of providing the copies," the court found it was "unreasonable" for the County to charge fees that sought to recover costs that "reflect the cost of operating the entire Clerk-Recorder's office and performing all the functions that it performs. . . . The indirect costs are over inclusive and do not fairly reflect the county's cost of providing the copies."

B. *In Amending Section 27366, the Legislature Gave Counties Discretion to Consider a Wide Range of Indirect Costs*

We are not persuaded by this interpretation and application of the statute. "We review de novo questions of statutory construction. In doing so, ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' [Citation.]" (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) " ' "We first examine the statutory language, giving it a plain and commonsense meaning." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616.) " ' "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Id.* at pp. 616–617.) " 'When a statute is capable of more than one construction, " '[w]e

7

must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers.' " ' " (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.)

Reviewing the matter de novo, we agree with the *Stanislaus* court that the term "indirect costs" is ambiguous, but we disagree with its interpretation. (*Stanislaus*, *supra*, 246 Cal.App.4th at pp. 1455–1456.) The *Stanislaus* court looked to California's Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) and the case law interpreting it. (*Stanislaus*, at pp. 1455–1456.) In formulating its "reasonably related to" test, the *Stanislaus* court relied upon *Turnbull & Turnbull v. ARA Transportation, Inc*. (1990) 219 Cal.App.3d 811, which stated that under a "fully allocated cost method" for determining the cost of a service, the "allocation of indirect or fixed overhead costs to a particular product or service must be reasonably related to the burden such product or service imposes on the overall cost of doing business." (*Id.* at p. 822.) But section 27366's legislative history does not support the *Stanislaus* court's reliance on the Unfair Practices Act when interpreting "indirect costs." Instead, it indicates the Legislature drew from a related Government Code provision—section 54985—when it amended section 27366.

Section 54985 provides in part that "a county board of supervisors shall have the authority to increase or decrease the fee or charge, that is otherwise authorized to be levied by another provision of law, in the amount reasonably necessary to recover the cost of providing any product or service or the cost of enforcing any regulation for which the fee or charge is levied. The fee or charge may reflect the average cost of providing any product or service or enforcing any regulation. Indirect costs that may be reflected in the cost of providing any product or service or the cost of enforcing any regulation shall be limited to those items that are included in the federal Office of Management and Budget Circular A-87 on January 1, 1984." (§ 54985, subd. (a).) However, this provision does not apply to "Any fee charged or collected by a county recorder . . . for . . . providing a copy of any document pursuant to Section . . . 27366."

8

(§ 54985, subd. (c)(6).)[3]

Section 27366 was enacted in 1947.  (Stats. 1947, ch. 424, § 1, p. 1165.)  In 1993, the Assembly proposed increasing the copying fees from "$1 for the first page and $.50 for each additional page" to "$1 for each page (including additional pages)."  (Assem. Com. on Local Government, Analysis of Assem. Bill No. 130 (1993–1994 Reg. Sess.), Feb. 24, 1993, p. 1.)  An assembly committee analysis states:  "According to the County Recorder's Association of the State of California, revenue for counties is dwindling and 'we are long overdue for an increase in fees!.' "  (*Id.* at p. 2.)

The Senate subsequently proposed repealing the copying fees altogether to provide counties more flexibility.  (Sen. Floor Analyses, 2d reading of Assem. Bill No. 130 (1993–1994 Reg. Sess.) as amended June 20, 1993, at p. 1.)  According to the Senate, "The Government Code already allows counties to charge the amount reasonably necessary to recover the costs for many services.  [¶]  This bill, as amended in committee, basically deregulates the . . . fees by deleting them from the codes.  In effect, it will give the counties flexibility in determining on their own what the fees will be relative to the . . . services."  (*Ibid*.)

The Senate was referring to section 54985, enacted by Assembly Bill No. 151 in 1983, which "allows counties to increase or decrease fees in an amount reasonably necessary to recover costs, with certain exceptions, including certain county recorder fees.  This bill repeals provisions which set certain recorder fees and strikes the related . . . exception, thereby allowing these county recorder fees to be directly proportional to the cost of providing the service."  (Assem. Conc. Sen. Amends. to Assem. Bill No. 130 (1993–1994 Reg. Sess.) as amended June 20, 1993, pp. 1–2.)  Later, the Assembly stated:  "AB 151 (Hannigan), Chapter 295, Statutes of 1983, allows counties to increase or decrease fees in an amount reasonably necessary to recover costs . . . .  [¶]  This bill requires county boards of supervisors to set fees in an amount

---

[3] The current text of this statute is in all material respects identical to its language as originally enacted.  (See Stats. 1983, ch. 295, § 1, pp. 873–874.)

9

necessary to recover direct and indirect costs, *and is therefore similar to the AB 151 provisions*." (Assem. Conc. Sen. Amends. to Assem. Bill No. 130 (1993–1994 Reg. Sess.) as amended Sept. 8, 1993, p. 2, italics added.)

Ultimately, however, instead of repealing section 27366, the Legislature amended its language. Like section 54985, section 27366 now provides the board of supervisors shall set the fee for copies of official records "in an amount necessary to recover the direct and indirect costs of providing the product or service or the cost of enforcing any regulation for which the fee or charge is levied."[4] (Stats. 1993, ch. 710, § 3, pp. 4039–4040.) Importantly, the Legislature did not carry over the provision that limited *indirect* costs to those items that are included in the OMB Circular. (Compare *ibid.* with § 54985, subd. (a).)

"Where the Legislature omits a particular provision in a later enactment related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction." (*Kaiser Steel Corp. v. County of Solano* (1979) 90 Cal.App.3d 662, 667.) By omitting any reference to the OMB Circular in the amended version of section 27366, we conclude the Legislature sought to allow counties to recover "indirect costs" that are not limited to the items listed in the OMB Circular. Therefore, we agree with the *Yolo* court that "section 27366 authorizes . . . [counties] to consider a wider range of indirect costs than section 54985. . . . [T]he overall statutory scheme suggests the Legislature intended to give boards of supervisors greater flexibility in identifying indirect costs associated with the production of copies." (*Yolo*, *supra*, 4 Cal.App.5th at p. 173.)

C.      *CPRR Fails to Establish the Ordinance Violates Section 27366*

Applying this interpretation of the statute, as gleaned from its legislative history, it

---

[4] The legislative history does not explain how fees for copies of official records are necessary to recover "the cost of enforcing any regulation for which the fee or charge is levied." Nonetheless, the Legislature's decision to carry over this language from section 54985 supports our conclusion that the Legislature was considering "indirect costs" as understood in section 54985 when it amended section 27366.

10

was reasonable for the County to charge a fee for copies of official records that sought to recover costs beyond those directly associated with making copies.

In opposing CPRR's petition, the County submitted declarations by employees familiar with the OMB Circular's accounting definitions and standards. Kent Kwong, the senior supervising auditor of the County's Auditor-Controller's Office, averred that the County calculated the indirect cost rate in its fee studies by following the guidelines set forth in the OMB Circular. Kevin Hing, an assistant controller in the County's Auditor-Controller/Clerk-Recorder's Agency, averred that both fee studies were reviewed and approved by the internal audit manager "for compliance with applicable accounting standards, including State Controller Standards, [and] Federal Office of Management Standards."

The record on appeal does not contain a copy of the OMB Circular. Nonetheless, these declarations from county auditors establish that in calculating the fee for copies of official records, the County relied in part on indirect costs as defined in the OMB Circular. As explained, the Legislature gave counties greater flexibility than this federal standard. Therefore, if the County's calculation of indirect costs complied with this more restrictive federal standard, the County's ordinance did not violate section 27366.

CPRR does not dispute the averments of Kent Kwong or Kevin Hing; CPRR provides no expert testimony explaining why the County's fee studies do not comply with the standards set forth in the OMB Circular. Instead, it argues it "exhaustively analyzed the costs which County had recouped in the fee and demonstrated where the costs could not 'be reasonably attributed to the service of providing copies.' " But, in our view, section 27366's legislative history does not support the *Stanislaus* court's determination that indirect costs must be limited to those that are reasonably related to the service of providing copies. Instead, the Legislature gave counties flexibility to go beyond indirect costs as defined in the OMB Circular. CPRR fails to establish the County's calculation of indirect costs violates section 27366. (*California Correctional Peace Officers Assn. v. State Personnel Bd.*, *supra*, 10 Cal.4th at p. 1153 [petitioner has burden of proving a writ of mandate should issue].)

11

III.  *The County's Ordinance Was Not Arbitrary, Capricious or Entirely Lacking in Evidentiary Support*

We cannot agree with the court's conclusion that the County's decision to charge $3.50 per page was "arbitrary, capricious, or entirely lacking in evidentiary support." In reaching this conclusion, the court relied on its assessment that "The County did not exercise its discretion under a proper interpretation of . . . [section] 27366." As explained, we discern no legal error in the County's interpretation of section 27366.

The court appeared troubled by the County's decision to charge a flat rate per page, rather than charging more for the first page and less for subsequent pages of the same document. On appeal, CPRR alludes to this issue—without analysis, in a footnote—when it contends the "excessiveness of the $3.50/page fee is clearly demonstrated by the cost of a typical 15 page deed of trust—$52.50." But, according to the County, the average copy request is for documents of five pages. As the court itself noted, for documents of this length, the fees charged to customers using both methods are likely to be roughly equivalent.

Here, in its verified petition, CPRR alleges that in August 2014 it purchased "a three-page recorded document . . . and was charged $3.50 per page, or a total of $10.50." In *Yolo*, the Third District approved a fee structure charging $7.35 for the first page and $2.00 for each subsequent page. (*Yolo*, *supra*, 4 Cal.App.5th at p. 157.) Therefore the same document in Yolo County would have cost $11.35. While CPRR contends it is not "credible" that it costs the County $52.50 to copy a 15-page document, it provides no evidence that calls into question the average length of copy requests, or the reasonableness of charging fees based on a flat rate per page. (*Helena F. v. West Contra Costa Unified School Dist.*, *supra*, 49 Cal.App.4th at p. 1799 ["if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld"].)

In its order granting the petition, the court relied on the Fifth District's opinion in *Stanislaus*, but the *Stanislaus* court reversed the denial of a petition for a writ of mandate because the fee study at issue "presented information on a per document basis, *not a per page basis*." (*Stanislaus*, *supra*, 246 Cal.App.4th at p. 1436.) The court found "there

12

was an apples-versus-oranges-type disconnect between the 2001 study's application of the time-based methodology to estimate *per document* costs and its recommendation to impose copying fees on a *per page* basis." (*Id.* at p. 1449.) But here the County's fee studies were based on the per page costs of making copies. Thus, *Stanislaus* is inapposite.

Here, reviewing the indirect costs included in the County's 2009 and 2010 fee studies, it may be unclear what some of them mean, such as the costs described as "other professional services," "intra fund, and indirect costs from the county wide cost plan." But according to qualified employees of the County, its calculation of indirect costs complies with applicable accounting standards, including the OMB Circular. CPRR fails to draw our attention to any evidence in the record that challenges or undermines this contention.

Notably, the County's second fee study in 2010 found a significantly higher cost of $4.08 per page to make copies of official records "due to increases in salary and benefits costs in the intervening year," but the County did not increase its initial proposal to charge $3.50 per page. In addition, the County compared its proposed fee with the fees charged by neighboring counties and the proposed fee fell within their range. Based on the record before us, we defer, as we must, to the County's decision to charge $3.50 per page for copies of official records. (*American Coatings Assn. v. South Coast Air Quality Management Dist.*, *supra*, 54 Cal.4th at p. 461.)

We have considered CPRR's other arguments against the County's ordinance, such as its argument that the County should have considered only the "net costs" of operating the Clerk-Recorder's Office, and we do not find them persuasive. We reverse the order granting the petition for a writ of mandate.

IV.    *The Court's Subsequent Orders Must Be Vacated*

In November 2017, the court entered a preliminary injunction against the County and required the County to "place all funds collected under the unlawful 2010 resolution into a separately identifiable interest bearing trust account." In January 2018, the court granted in part CPRR's motion for attorney fees and found that CPRR could recover fees

13

of $268,154.51.

On appeal, the County contends the court had no jurisdiction to enter a mandatory preliminary injunction and that the court abused its discretion by doing so. In addition, the County argues the court erred in awarding attorney fees to CPRR, contending CPRR did not meet "the statutory criteria for awarding fees under the private attorney general doctrine embodied in [Code of Civil Procedure] section 1021.5." We do not address these contentions because both the order granting the preliminary injunction and the order awarding attorney fees are based on the false premise that the County's decision to charge $3.50 per page was unlawful or arbitrary and capricious. Having reversed the order granting the petition for a writ of mandate, we vacate these subsequent orders.

DISPOSITION

We reverse the order granting the petition for a writ of mandate, and we vacate the subsequent orders issuing a preliminary injunction against the County and awarding attorney fees to CPRR. We remand for the court to enter judgment in favor of the County on CPRR's writ petition. The County is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____

Jones, P. J.

WE CONCUR:


_____

Simons, J.


_____

Burns, J.

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. James P. Cramer; Hon. Kimberly E. Colwell

Counsel:

Donna R. Ziegler, County Counsel, Farand Kan, Deputy County Counsel; Porter Scott, John R. Whitefleet and Thomas L. Riordan for Defendant and Appellant County of Alameda.

Donald W. Ricketts for Plaintiff and Respondent California Public Records Research, Inc.